Grafton
No. 2006-382

PATRICK CANTWELL

v.

J & R PROPERTIES UNLIMITED, INC.

Argued: April 3, 2007
Opinion Issued: May 30, 2007

*Brannen, Dunn & Stewart, PLLC*, of Lebanon (*Barney L. Brannen* on the brief and orally), for the plaintiff.

*Janson & Koppenheffer, LLP*, of Lebanon (*William K. Koppenheffer* on the brief and orally), for the defendant.

DALIANIS, J. The plaintiff, Patrick Cantwell, appeals the order of the Superior Court (*Houran*, J.) dismissing his class action claims brought against the defendant, J & R Properties Unlimited, Inc., and denying his motion to compel discovery responses. He also appeals the order of the Superior Court (*Burling*, J.) dismissing his New Hampshire Consumer Protection Act (CPA) claim. *See* RSA ch. 358-A (1995 & Supp. 2006). The defendant cross-appeals the order of the Superior Court (*Houran*, J.) granting partial summary judgment to the plaintiff on his claim that the

defendant violated RSA 540-A:6, I (1997) (amended 2006) by failing to give him a signed receipt for his security deposit. We affirm in part, reverse in part, vacate in part and remand.

The record supports the following: In April 2003, the plaintiff and four others entered into an agreement with the defendant to rent residential property in Hanover. Under its terms, the plaintiff and his co-tenants gave the defendant $4,300 as a security deposit. The plaintiff's contribution to the security deposit was $537.50, which he paid by personal check.

The plaintiff and his co-tenants terminated their tenancy in June 2004. The defendant failed to pay interest on the plaintiff's security deposit within thirty days of the termination of the tenancy, paying it instead on August 5, 2004. *See* RSA 540-A:7, I (2007).

In February 2005, the plaintiff brought individual and class claims against the defendant for failing to pay interest on security deposits and an individual claim against the defendant for failing to provide him with a signed receipt for his deposit. The defendant objected to the plaintiff's class claim and moved for partial summary judgment on his individual claim that it failed to provide him with a signed receipt. The plaintiff countered with his own motion seeking partial summary judgment as to the defendant's liability on his receipt claim. The trial court denied class certification and granted the plaintiff partial summary judgment on the receipt claim.

Thereafter, the plaintiff moved to compel responses to discovery related to his class claims, which the court denied, explaining that the discovery sought was irrelevant, as the class claims had been dismissed.

The plaintiff then moved for summary judgment with respect to damages for his receipt claim and with respect to liability and damages for the defendant's failure to pay interest on his security deposit. The defendant conceded that the plaintiff was due the damages he sought for his receipt claim and admitted that it had failed to pay him interest on his security deposit in a timely fashion. The defendant argued that the damages to which the plaintiff was entitled for its late payment of interest were equal to the amount of his contribution to the deposit, *i.e.*, $537.50. The trial court agreed, and rejected the plaintiff's assertion that he was entitled to a remedy under the CPA for the defendant's failure to timely pay the interest. This appeal and cross-appeal followed.

I

The plaintiff first challenges the trial court's dismissal of his class claims and its later denial of discovery related to those claims. Class actions may be brought under Superior Court Rule 27-A, which provides, in pertinent part:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all if:

(1) The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(2) There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) The representative parties will fairly and adequately protect the interests of the class;

(5) A class action is superior to other available methods for the fair and efficient adjudication of the controversy; and

(6) The attorney for the representative parties will adequately represent the interests of the class.

The plaintiff alleged on information and belief that the defendant had "repeatedly failed to account properly for or to pay interest on security deposits taken from numerous other residential tenants, similarly situated" to him. He contended that, as the number of present and former tenants of the defendant was numerous and many live throughout the United States, "joinder of all prospective class members" was impracticable. He identified the following questions of law and fact common to all class members and asserted that these questions predominated over any question affecting only an individual class member: (1) whether the defendant systematically failed to account properly for or to pay interest on security deposits; (2) the amount of interest earned but not paid on the security deposits; (3) the measure of damages; (4) whether the defendant's conduct violated the CPA; and (5) whether the defendant knowingly and/or willfully violated the CPA. He contended that his claims were typical of the class claims and that a class action was a superior vehicle for adjudicating the claims.

The defendant filed an objection to treating the plaintiff's claim as a class action, to which the plaintiff responded with a memorandum in support of class certification. Although the plaintiff had propounded discovery to the defendant when he submitted his memorandum of law, he had not yet received any responses. Based upon these pleadings, the trial court denied class certification, ruling that the plaintiff failed to establish commonality and typicality.

The court concluded that the plaintiff failed to establish commonality because he "failed to substantiate this claim with any evidence," including

evidence "that the defendant engaged in routinized procedures and practices that left his former tenants without [proper] accounting for their security deposits" and failed to "identify what the defendant's [alleged] standardized conduct entailed." The court concluded that the plaintiff failed to establish typicality because he did not present "any evidence to show that his claims arose from a certain practice or course of conduct of the defendant that would ... give rise to similar claims among the other members of the proposed class."

When the plaintiff moved to compel responses to discovery about his class claims, the trial court denied the motion on the ground that the court had already dismissed the class claims. The plaintiff contends that in dismissing his class claims on the ground that he failed to produce evidence to support his class allegations and then denying his motion to compel the discovery that would have enabled him to produce this evidence, the trial court erred. We agree.

This is our first occasion to interpret Superior Court Rule 27-A. Because this rule is similar to Federal Rule of Civil Procedure 23, we rely upon cases interpreting the federal rule as analytic aids. *See State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 623-24 (1982).

Although Federal Rule of Civil Procedure 23 (before it was amended in 2003), like Superior Court Rule 27-A, requires that class certification be decided "as early as practicable," most federal circuit courts of appeal agree that this "does not mean that [a] plaintiff must rest on his pleadings." *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 714 (N.D. Ill. 2005); *see In re Initial Public Offering Securities Lit.*, 471 F.3d 24, 38 (2d Cir. 2006) (citing cases). Under Federal Rule of Civil Procedure 23, trial courts "must conduct a rigorous analysis of the prerequisites established by [the] Rule ... before certifying a class." *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Such a "rigorous analysis" ordinarily involves looking beyond the allegations of the plaintiff's complaint. *See In re Initial Public Offering Securities Lit.*, 471 F.3d at 38, 41. Therefore, most federal circuit courts of appeal have ruled that when deciding a motion for class certification, the trial court does not, as with a motion to dismiss, accept all of the plaintiff's allegations as true. *See id.* at 38 (citing cases); *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir.), *cert. denied*, 534 U.S. 951 (2001). *But see J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999). As the Seventh Circuit has explained:

> The proposition that a [trial] judge must accept all of the complaint's allegations when deciding whether to certify a class

cannot be found in Rule 23 and has nothing to recommend it. The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under [Federal] Rule [of Civil Procedure] 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment ... , and if necessary by trial. By contrast, an order certifying a class usually is the [trial] judge's last word on the subject; there is no later test of the decision's factual premises .... Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23.

*Szabo*, 249 F.3d at 675-76.

"Certifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants." *Id.* at 677. "[G]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (quotation omitted). In this way, the trial court protects the absent class members and defendants from a spurious class action. *See Szabo*, 249 F.3d at 677; *Love v. Georgia Pacific Corp.*, 590 S.E.2d 677, 681 (W. Va. 2003).

■ Because class certification usually is not decided upon the pleadings, "the predominant view is to allow discovery before the motion for certification." *Thomas*, 370 F. Supp. 2d at 714 (quotation omitted). Courts generally "defer [a] d[e]cision on certification pending discovery, if the existing record is inadequate for resolving the relevant issues." *Chateau de Ville Prod. v. Tams-Witmark Music*, 586 F.2d 962, 966 (2d Cir. 1978). "Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held." *Id.*

However, "[t]o avoid the risk that a [class certification] hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation, a [trial] judge must be accorded considerable discretion to limit both discovery and the extent of the hearing." *In re Initial Public Offering Securities Lit.*, 471 F.3d at 41. "But even with some limits on discovery and the extent of the hearing, the [trial] judge must receive enough

evidence, by affidavits, documents, or testimony, to be satisfied that each [class certification] requirement has been met." *Id.*

██ Here, the trial court erred when it denied the plaintiff's motion to compel the discovery he needed to create a sufficient evidentiary record from which the trial court could decide whether the prerequisites to maintaining a class action were met. *See Love*, 590 S.E.2d at 681. "Without conducting discovery on the prerequisites for class certification, the [plaintiff was] severely hampered in [his] ability to address and to meet [his] burden for class certification . . . ." *Id.* Under the circumstances of this case, the trial court erred by not permitting the plaintiff to conduct discovery on the prerequisites to maintaining a class action. Before the trial court ruled definitively on class certification, it should have given the plaintiff "a fair opportunity to develop the facts necessary to show that his case is suitable for class action treatment." *Smolen v. Dahlmann Apartments, Ltd.*, 338 N.W.2d 892, 898 (Mich. Ct. App. 1983).

Because we conclude that the trial court erred when it ruled definitively on the plaintiff's class claims before he had had a sufficient opportunity to conduct discovery, we vacate its order denying his motion to compel responses to discovery pertaining to his class claims.

## II

The plaintiff next argues that the trial court erred in denying his motion for summary judgment and dismissing his CPA claim. He contends that he was "denied an opportunity to conduct *any* discovery" before bringing his summary judgment motion. He asserts, in particular, that the trial court failed to permit him to "conduct discovery in support of his allegations that the Defendant's conduct was 'willful or knowing.'"

The record submitted on appeal does not support these assertions as it does not contain any order from the trial court denying the plaintiff the opportunity to conduct discovery on his CPA claim. The trial court denied the plaintiff's motion to compel responses to discovery pertaining to his class claims, not his individual CPA claim. We disagree with the plaintiff that the discovery for which he moved to compel responses related to his individual CPA claim.

## III

In its cross-appeal, the defendant argues that the trial court erred when it ruled that the defendant failed to provide the plaintiff with a signed receipt for his security deposit. The version of RSA 540-A:6, I, in effect at the time required a landlord, on receipt of a security deposit from a tenant, to deliver a signed receipt for the deposit to the tenant. This receipt had to

state "the amount of the deposit and [specify] the place where the deposit or bond for the deposit . . . will be held." RSA 540-A:6, I. It also had to "notify the tenant that any conditions in the rental unit in need of repair or correction should be noted on the receipt or given to the landlord in writing within 5 days of occupancy." *Id.*

We review the trial court's interpretation of RSA 540-A:6, I, *de novo*. *See Adams v. Woodlands of Nashua*, 151 N.H. 640, 641 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute. *Simpson v. Young*, 153 N.H. 471, 475 (2006). When construing its meaning we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to the words used. *Id.*

Under the plain meaning of the statute, the defendant was required to provide a signed receipt to the plaintiff that: (1) stated the amount of the security deposit; (2) specified where the deposit would be held; and (3) notified the tenant that any conditions in the rental unit in need of repair or correction should be noted on the receipt or given to the landlord in writing within five days of occupancy. The defendant asserts that it substantially complied by endorsing the plaintiff's security deposit check and providing him with a lease that contained a provision intended to comply with this statute. This provision acknowledged the amount of the security deposit, informed the tenant of the bank where the deposit would be held, and informed the tenant that if he or she failed to return the property condition report attached to the lease within seven days, the defendant would deem the property to be in perfect condition. Although the defendant concedes that it did not sign the lease, it argues that "[t]here was no evidence . . . that [it] refused to sign the contract."

The defendant contends that such substantial compliance with RSA 540-A:6, I, is sufficient. *See Bourgeois v. Town of Bedford*, 120 N.H. 145, 148 (1980). We agree.

We have not previously considered whether the doctrine of substantial compliance applies to RSA 540-A:6, I. To date, however, we have declined to apply it in cases brought under RSA chapter 540 (2007), which concerns summary possessory actions. RSA chapter 540 authorizes summary possessory actions to simplify and facilitate the landlord's recovery of possession of the premises. *Lavoie v. Szumiez*, 115 N.H. 266, 267 (1975). The purpose of such actions "is to permit the landlord to recover possession on termination of a lease without suffering the delay, loss and expense to which he may be subjected under a common-law action." *Matte v. Shippee Auto*, 152 N.H. 216, 218 (2005) (quotation omitted). Because RSA chapter 540 "establish[es] rights and benefits which a landlord did not enjoy at common law, strict compliance with [its] terms is required." *Lavoie*, 115 N.H. at 267.

RSA 540-A:6, I, by contrast, does not establish rights and benefits that a landlord did not enjoy at common law. Rather, it imposes an obligation upon the landlord that did not exist at common law. Under these circumstances, therefore, we conclude that strict compliance by the landlord with the requisites of RSA 540-A:6, I, is not required.

Thus, because strict compliance is not required, "[m]inor deviations from the statutory procedure or technical violations thereof may be excused if there is substantial compliance." *Bourgeois*, 120 N.H. at 148 (quotation omitted). Here, there is no dispute that the plaintiff received all of the information required by RSA 540-A:6, I. Under these circumstances, the defendant substantially complied with RSA 540-A:6, I. Therefore, we reverse the trial court's ruling that the defendant failed to provide the plaintiff with a signed receipt for his security deposit.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.