Rockingham
No. 2006-900

PETITION OF BAYVIEW CREMATORY, LLC & a.

Argued: June 14, 2007
Opinion Issued: August 8, 2007

*Wiggin & Nourie*, of Manchester (*Doreen Connor* and *Mary Ann Dempsey* on the joint brief) for petitioners Derek Wallace, Hart Wallace Funeral Home and Simplicity Funeral Home.

*Hoefel, Phoenix & Gormley*, of Portsmouth (*Lawrence Gormley* on the joint brief) for petitioners Linda Stokes, individually and as trustee of the Dekes Realty Trust, and Larry Stokes.

*Getman, Stacey, Schulthess & Steere, PA*, of Bedford (*Andrew R. Schulman* and *Dona Feeney* on the joint brief, and *Mr. Schulman* orally) for petitioner Bayview Crematory, LLC.

*David H. Charlip*, of Hollywood, Florida, by brief and orally, and *Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Christopher E. Grant* on the brief), for the respondents.

GALWAY, J. The petitioners filed a petition for original jurisdiction pursuant to Supreme Court Rule 11 after the Superior Court (*Morrill* J.) denied their request for an interlocutory appeal of its order certifying as a class action the lawsuit of the respondents, who are clients of funeral homes that contracted with petitioner Bayview Crematory (Bayview). We reverse the class certification order.

The record supports the following. Petitioner Derek Wallace was the owner and operator of Bayview. He was also the funeral director at petitioner Hart Wallace Funeral Home and the owner and operator of petitioner Simplicity Funeral Home. Decedents interred at Hart Wallace Funeral Home were transported to Bayview for cremation. Bayview also provided cremation services to five other funeral homes and crematoria that are defendants in the underlying litigation.

The respondents, who are the plaintiffs in the underlying litigation, brought suit against the petitioners and other funeral homes that contracted with Bayview, asserting, *inter alia*, negligence and negligent infliction of emotional distress (NIED). Under the negligence claims, the respondents alleged that the petitioners, along with other funeral homes and funeral directors, breached their duties to ensure that the cremations at Bayview were authorized by the State and performed in accordance with the standard of care for a crematorium, resulting in emotional suffering, stigma damages, and other injuries. Under the NIED claim, the respondents alleged that the defendants' negligent handling of bodies of decedents caused the respondents to know, suspect or believe that the remains of a deceased loved one had not been properly cremated.

The respondents later moved for class certification, alleging that "it is believed that there are hundreds of putative Class Members whose next-of-kin or loved ones were cremated at the Bayview Crematory as the result of funeral directing services performed by one of the Funeral Home Defendants." This motion requested that the court certify six subclasses, with each subclass containing all New Hampshire residents who contracted with one of the defendant funeral homes and whose decedent was cremated at Bayview.

The motion provided additional factual allegations regarding the petitioners' conduct: Bayview used the services of medical examiners who were not licensed to practice medicine in New Hampshire. Bayview was never certified by the New Hampshire Department of Health and Human Services. Many of the documents used in the day-to-day operations of Bayview were forged, including authorizations to perform cremations, medical examiner cremation certificates, and a death certificate. A body was left decomposing in an inoperative refrigerator. "Multiple bodies" were placed in retorts and cremated simultaneously. Metal tags used to

identify bodies were placed in the decedents' files rather than affixed to their bodies. Cremations were performed for which the next of kin had signed an authorization form for another crematorium.

These allegations, the respondents argued, supported emotional distress claims of all next of kin whose decedents were cremated at Bayview. Because there is no method for determining whether the remains received by the respondents were of their respective decedents, the improper procedures and certifications at Bayview caused the respondents severe emotional distress. The respondents also argued that the funeral homes are vicariously liable for Bayview's breaches of the standard of care for a crematory.

The trial court ruled that "certain negligence issues are appropriate for class treatment." Specifically, these issues were:

> (1) the nature and duration of Defendant Bayview's alleged mishandling of human remains; (2) the standard of care in the funeral industry—alleged to apply to all defendants—for providing and supervising cremation services; and (3) the nature of defendants' alleged breach of that standard of care, either by action or inaction.

The trial court certified the matter as a class action, and noted that the "order shall have no impact on the ability of class members, should the class representatives prevail at trial, to have damages determined individually."

Before us, the petitioners argue that the trial court erred in ruling that the common issues among the putative class members predominate over individual ones on the issue of liability. The petitioners argue that individual issues predominate over the common issues for two primary reasons. First, for the putative class members to prove liability for NIED, each member must prove through expert testimony that he suffered severe emotional distress and a physical manifestation of that distress. Thus, the litigation will require factual inquiry into each putative class member's physical symptoms and such an inquiry will predominate over the common issues. Second, for the members of the various classes to recover, each putative class member must prove that his decedent was mishandled. Because the respondents have no evidence of consistent and longstanding mishandling of bodies, they cannot prove in one trial that all putative class members' decedents were mishandled.

In response to the petitioners' first argument, the respondents argue that the trial court did not rule on the merits of NIED liability in its order, but, instead, ruled only that certain negligence issues are properly subject to class treatment. In response to the petitioners' second argument, the

respondents argue that the petitioners improperly inject considerations of the merits of the underlying suit into our review of the trial court's class certification. They argue that a trial court should only consider procedural matters when deciding whether to certify a class and not the merits of the claims asserted.

Both parties acknowledge that we have not established a standard of review for a trial court's class certification order. The petitioners suggest that we adopt a mixed standard of unsustainable exercise of discretion and *de novo* review. The respondents suggest that we adopt solely a standard of unsustainable exercise of discretion.

█ We begin by addressing the standard of review. Although we have yet to establish a standard for reviewing class certification orders, the federal courts have done so. Because Superior Court Rule 27-A, which provides the criteria for class certification, is similar to its federal counterpart, Federal Rule of Civil Procedure 23, we rely upon federal cases interpreting the federal rule as analytic aids. *Cantwell v. J&R Props. Unlimited,* 155 N.H. 508, 511 (2007). The First Circuit Court of Appeals has consistently reviewed decisions of class certification under an abuse of discretion standard, with *de novo* review for purely legal questions. *See McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418, 422 (1st Cir. 2007); *In re Polymedica Corp. Securities Litigation,* 432 F.3d 1, 4 (1st Cir. 2005); *Tardiff v. Knox County,* 365 F.3d 1, 4 (1st Cir. 2004).

> We review orders granting or denying class certification for abuse of discretion. A district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales. Within this rubric, a district court necessarily abuses its discretion when its decision or judgment depends upon an incorrect view of the law. And, finally, a district court's answer to an abstract legal question, even though made in the course of reaching a generally discretionary judgment, engenders de novo review.

*McKenna,* 475 F.3d at 422 (citations, quotations and brackets omitted). We concur with the First Circuit's reasoning and adopt this standard, with the caveat that we apply the standard of "unsustainable exercise of discretion" rather than "abuse of discretion." *See State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard). Accordingly, we will review the trial court's decision for an unsustainable

exercise of discretion, but review the court's decisions on matters of law *de novo*.

We now turn to the substantive issues. Superior Court Rule 27-A(a) provides the following prerequisites to a class action:

(1) The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(2) There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) The representative parties will fairly and adequately protect the interests of the class;

(5) A class action is superior to other available methods for the fair and efficient adjudication of the controversy; and

(6) The attorney for the representative parties will adequately represent the interests of the class.

Both questions presented by the petitioners focus on the second prerequisite, that the common questions of law or fact "predominate" over the questions affecting only individual putative class members. Again, we rely upon federal case law to assist in our analysis.

■ Rule 27-A(a)(2) is a combination of the "commonality" requirement in Federal Rule 23(a)(2) and the "predominance" requirement in Federal Rule 23(b)(3). Satisfying commonality requires meeting a relatively low threshold. *Chiang v. Veneman*, 385 F.3d 256, 265, 273-74 (3d Cir. 2004); *see also* A. CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS § 3:10, at 274, 277 (4th ed. 2002) (stating that the commonality requirement is easily met in most cases). This requirement will be satisfied if the proposed class members share at least one significant question of law or fact in common with each other. *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007); *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 527-28 (3d Cir. 2004); CONTE, *supra* § 3:10, at 273-74.

■ The predominance requirement, however, is far more demanding. *Warfarin Sodium Antitrust Litigation*, 391 F.3d at 528; *Robinson v. Texas Auto. Dealers Assoc.*, 387 F.3d 416, 421 (5th Cir. 2004), *cert denied*, 544 U.S. 949 (2005). To satisfy the predominance test, the issues common to the proposed class must outweigh the issues that are particular to the individual class members. *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 226 (2d Cir. 2006). The purpose of the predominance test is to promote the "economies of time, effort, and expense, and promote

uniformity of decision as to persons similarly situated . . . ." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (quotation omitted); *see also* CONTE, *supra* § 4.24, at 154 (stating that judicial economy and advantages over other methods for handling the litigation as a practical matter underlie the predominance test). To achieve these pragmatic goals, the trial court must consider how the case will be tried by identifying the substantive issues that will control the outcome of the case, assessing which issues will predominate, and determining whether those issues are common to the class. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1254-55 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005) (holding that, to determine whether class or individual issues predominate, the court must consider the claims, defenses, relevant facts, and substantive law).

■ In the instant case, the trial court concluded that the substantive issues that will control the outcome of the case were: (1) "the standard of care in the funeral industry for providing and supervising cremation services"; (2) "the nature of the defendants' breach of the standard of care"; and (3) "whether the class members suffered damage as a result of the acts or omissions committed by the defendants . . . ." The order then certified the litigation as a class action for those three issues. The court stated, "This order shall have no impact on the ability of class members, should the class representatives prevail at trial, to have damages determined individually." The plain wording of this order certified the issue of liability for class treatment and left damages as the only issue not certified. The trial court thus removed the requirement of expert testimony from the assessment of liability for NIED, which was error.

Further, we disagree with the trial court's finding of predominance, as there is an issue individual to each putative class member that will control the litigation. NIED requires, as an element of liability, that the plaintiff prove that physical injury resulted from the emotional distress caused by the defendant. *See Palmer v. Nan King Restaurant*, 147 N.H. 681, 683 (2002). To ensure that the emotional injury is sufficiently serious to warrant legal protection and establish a cause of action, expert testimony is required to prove physical symptoms suffered from alleged negligent infliction of emotional distress. *O'Donnell v. HCA Health Servs. of N.H.*, 152 N.H. 608, 611-12 (2005). Because of these requirements for establishing a cause of action in NIED, each plaintiff will have to demonstrate, with expert testimony, the physical symptoms that he or she suffered. This will require an inquiry into the physical symptoms claimed by each putative class member, each member's prior medical and

psychological history, and the qualifications of each member's experts. These proceedings would undermine the economies of time, effort and expense that class actions are designed to promote. In short, the questions relating to the individual putative class members regarding NIED will predominate over those common to all putative class members.

Having determined that the trial court erred in removing an element of NIED from the liability determination and in ruling that the issues common to the certified class will predominate over the individual issues, we need not address the petitioners' second argument. We conclude that the trial court unsustainably exercised its discretion by certifying liability for class certification.

*Reversed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.