Richard JACKSON, Mary Jackson, Thomas Fehringer, Robert Hradecky, Deborah Hradecky, Dean Lousberg, and Lousberg Partnership, on behalf of themselves and those similarly situated, Plaintiffs–Appellees,

v.

UNOCAL CORPORATION, Unocal Oil Company of California, and Unocal Pipeline Company, Defendants–Appellants.

No. 09CA0610.

Colorado Court of Appeals, Div. A.

July 23, 2009.

The Hannon Law Firm, L.L.C., Kevin S. Hannon, Justin D. Blum, Denver, Colorado; Inman Flynn Biesterfeld & Brentlinger, P.C., Richard P. Brentlinger, Eric J. Voogt, Denver, Colorado, for Plaintiffs–Appellees.

Holland & Hart L.L.P., John A. Ramsey, Rachel A. Yates, Greenwood Village, Colorado, for Defendants–Appellants.

Opinion by Judge WEBB.

This land damages class action arises from the release of asbestos during removal of an underground oil pipeline previously owned by defendants, Unocal Corporation, Unocal Pipeline Company, and Union Oil Company of California (collectively Unocal). We granted Unocal's petition under C.R.C.P. 23(f) and section 13–20–901, C.R.S.2008, for interlocutory review of the trial court's order certifying two classes represented by named plaintiffs, Richard and Mary Jackson, Robert and Deborah Hradecky, Thomas Fehringer, Dean Lousberg, and the Lousberg Partnership.

We conclude that the trial court abused its discretion by declining to resolve which side's experts were more persuasive as to opinions potentially determinative of class certifica-

tion; by failing specifically to address the need for individualized damages evidence; and by not performing a rigorous analysis of Unocal's affirmative defenses, which, like the experts, the court mistakenly treated as an impermissible inquiry into the merits. We also conclude that the court did not apply the correct burden of proof, which is by a preponderance of the evidence. Therefore, we vacate the certification order and remand for further findings as directed in this opinion. On remand, the trial court may, in its discretion, take additional evidence to the extent necessary because of the standards announced in this opinion.[1]

## I. Introduction

The pipeline ran for sixty-nine miles beneath easements in rural Logan and Weld Counties. In 1996, after having taken the pipeline out of service, Unocal sold it to a now-defunct salvage company that excavated and removed the pipe. This process left behind pieces of pipewrap insulation below and above ground along the easements. When tests revealed the presence of asbestos in the pipewrap, Unocal contacted state and federal environmental authorities. For the next several years, Unocal monitored and abated the asbestos along the easements under work plans approved by the Colorado Department of Public Health and Environment (CDPHE).

In 2006, plaintiffs brought this action, asserting claims for nuisance, negligence, trespass, respondeat superior, and unjust enrichment, and seeking compensatory damages for diminution of land value, remediation efforts, and loss of use and enjoyment. They sought to certify two plaintiff classes: the "easement property class," for the sixty-six owners of properties from which pipe had been removed; and the "contiguous property class," for 235 properties contiguous to the easement properties. As to the latter class,

plaintiffs alleged "the asbestos pipewrap insulation was spread . . . by wind[ ] to neighboring properties."

The trial court held an evidentiary hearing on class certification. Plaintiffs submitted as expert testimony the deposition of an industrial hygienist, Dr. Terry Spear, and an air diffusion report prepared by an environmental engineer, Dr. Kumar Ganesan, who did not testify and had not been deposed. The environmental consultant overseeing the abatement program, Matthew Roberts, and a toxicologist, Dr. Brent Kerger, testified as experts for Unocal. They primarily disputed Dr. Spear's testimony concerning whether, and if so, when and to what extent, asbestos had migrated to the contiguous properties.

The trial court declined to resolve this conflicting expert testimony, explaining that "merits questions are not appropriate for determination at this stage," and "whether the plaintiffs' experts or defendants' experts are correct . . . is for the jury to determine after trial." Nevertheless, finding that the "opinion of Dr. Spear and the modeling of Dr. Ganesan . . . show some reasonable evidence that the contiguous properties are contaminated," it certified the contiguous property class, as well as the easement class, under C.R.C.P. 23(a) and (b)(3).

The trial court recognized that there were "some questions of fact and law which are not common to all class members," including "the amount of damages suffered by each class member." But it did not specifically address Unocal's argument that the alleged need for highly individualized evidence of damages defeated predominance. As to Unocal's similar argument concerning affirmative defenses, the court merely said that, "Potential affirmative defenses are not to be considered during the class certification process as they go to the merits of the case."

---

1. Remand moots Unocal's assertion, which plaintiffs dispute, that the trial court improperly adopted findings proposed by plaintiffs. Such an assertion could be eliminated from any appeal following remand if the court made findings independently rather than adopting wholesale findings proposed by either party. *See Uptime Corp. v. Colo. Research Corp.*, 161 Colo. 87, 93, 420

P.2d 232, 235 (1966) ("We do not wish to be understood as approving the practice of uncritical adoption of findings prepared by litigants. But if, after careful study, the trial judge concludes that the findings prepared by a party correctly state both the law and the facts, then there is no good reason why he may not adopt them as his own.").

## II. Standard of Review

■ "[W]hether to certify a class action lies within the discretion of the trial court and will not be disturbed unless the decision is clearly erroneous and an abuse of discretion." *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309, 317 (Colo. 1985); *see also Farmers Ins. Exch. v. Benzing*, 206 P.3d 812, 817–18 (Colo.2009). "An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies the incorrect legal standards." *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo.App.2005).

## III. The Burden of Proof for Class Certification

Initially, our review is confounded because, on the one hand, the trial court's certification order is unclear regarding the burden of proof that it required plaintiffs to meet before certifying the classes. On the other hand, Colorado law offers little guidance on exactly what that burden of proof should be. Hence, we begin with a brief overview of Colorado class action cases, then address the burden of proof applied by federal courts at the class certification stage, and based on federal precedent conclude that the burden is by a preponderance of the evidence, which we cannot say that the trial court applied.

### A. Overview of Class Actions

■ "The basic purpose of a class action is to eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit." *Mountain States Tel. & Tel. Co. v. Dist. Court*, 778 P.2d 667, 671 (Colo.1989).

C.R.C.P. 23 provides, as pertinent here:

(a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. Any action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

. . . .

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) The difficulties likely to be encountered in the management of class action.

■ "The class action advocate bears the burden of demonstrating that the claims asserted are cognizable as a class action." *Ammons v. American Family Mut. Ins. Co.*, 897 P.2d 860, 862 (Colo.App.1995). "The [trial] court's obligation is to determine whether the requirements of C.R.C.P. 23 have been met." *Medina*, 121 P.3d at 348. However, the parties have cited no Colorado case, nor have we found one, directly resolving the burden of proof that the class proponent must meet before the class may properly be certified.

Plaintiffs' emphasis on the observation in *Benzing*, 206 P.3d at 818, that the trial court "must generally accept as true the allegations in support of certification" does not resolve this question for two reasons. First, that decision did not mention the burden of proof beyond noting that it fell to the class proponent. *Id.* Second, the court later ex-

plained that the trial court should inquire into the class proponent's theory of the case to verify that common issues predominate over individual issues. *Id.* at 820.

## B. Burdon of Proof

■ Because "C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23," we look to cases applying the federal rule when interpreting its Colorado counterpart. *Goebel v. Colorado Dep't of Institutions,* 764 P.2d 785, 794 n. 12 (Colo.1988); *see Benzing,* 206 P.3d at 818; *Medina,* 121 P.3d at 348.

No Supreme Court case speaks directly to the burden of proof that the class proponent must meet to sustain certification of the class. *General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), holds that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161, 102 S.Ct. 2364.

The federal circuit courts that have recently addressed the burden of proof at class certification adopt a preponderance of the evidence standard. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202–04 (2d Cir.2008); *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 320 (3d Cir.2008); *Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 233 (2d Cir.2006); *see also In re HealthSouth Corp. Securities Litigation,* 257 F.R.D. 260, 272 (N.D.Ala.2009) ("[T]he preponderance of the evidence standard seems to be gaining momentum."); *but see Shariff v. Goord,* 235 F.R.D. 563, 568 n. 3 (W.D.N.Y.2006) (noting burden of proof at class certification stage is unsettled).

State courts have also begun applying a preponderance of the evidence standard to class certification. *See, e.g., Sav-on Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 17 Cal.Rptr.3d 906, 96 P.3d 194, 203 (2004); *Bourgeois v. A.P. Green Indus., Inc.,* 939 So.2d 478, 487 (La.Ct.App.2006); *Whitaker v. 3M Co.,* 764 N.W.2d 631, 638 (Minn. Ct.App.2009); *Warner v. Waste Mgmt., Inc.,* 36 Ohio St.3d 91, 521 N.E.2d 1091, 1098 n. 9 (1988).

Cases adopting a preponderance standard are persuasive for the following reasons:

- Because section 13–25–127(1), C.R.S. 2008, provides that "the burden of proof in any civil action shall be by preponderance of the evidence," preponderance should be the default choice. *But see In re Phillips,* 139 P.3d 639, 644 (Colo.2006) ("A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met.").

- Class certification has been analogized to a threshold showing of personal or subject matter jurisdiction, *In re Initial Public Offering Securities Litigation,* 471 F.3d 24, 40 (2d Cir.2006) *(IPO),* which in Colorado must be established by a preponderance of the evidence. *See Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1192 n. 3 (Colo.2005) (personal jurisdiction); *Ferrel v. Colorado Dep't of Corr.,* 179 P.3d 178, 184 (Colo.App.2007) (subject matter jurisdiction).

- A lower standard such as "some showing," rejected by *IPO,* 471 F.3d at 42, is difficult to reconcile with the "rigorous analysis" mandated by *Falcon. See In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d at 321 ("[P]roper analysis under Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties.... [I]nvoking the phrase 'threshold showing' risks misapplying Rule 23.").

- Requiring proof by a preponderance of the evidence does not encroach on the trial court's prerogative to resolve class certification within its discretion. *See, e.g., Remote Switch Sys., Inc. v. Delangis,* 126 P.3d 269, 275 (Colo.App.2005) (attorney fees must be established by a preponderance of the evidence, but court's decision reviewed for abuse of discretion); *People v. Lassek,* 122 P.3d 1029, 1034 (Colo.App.2005) (same analysis, restitution).

■ Therefore, we conclude that a class action proponent must satisfy the C.R.C.P. 23 requirements by a preponderance of the evidence.

## C. Application

The trial court relied on *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D.Colo. 1993), in requiring only "some evidence of a reasonable relationship between the class boundaries and the spread of contamination." It then certified the contiguous property class, finding that "plaintiffs have produced sufficient evidence that the class properties are contaminated for certification purposes," and that plaintiffs' expert evidence, which it found to be not "so flawed to be inadmissible," "show[ed] some reasonable evidence that the contiguous properties are contaminated."

Under the standard we adopt today, which was not part of Colorado law at the time of the certification hearing, the trial court's certification of the contiguous property class using a "some evidence" or "some reasonable evidence" standard was an abuse of discretion.

We further conclude that remand is necessary for the trial court to clarify the burden of proof as to all other findings concerning either of the classes, except as otherwise provided in this opinion. The court did not articulate a particular burden of proof in any other findings, and we consider it unlikely that the court applied different burdens of proof in the same order.

Accordingly, we vacate the trial court's certification order and remand for specific findings on each of the C.R.C.P. 23(a) and (b)(3) requirements for the two plaintiff classes, using the preponderance of the evidence standard, which may require taking additional evidence. Nevertheless, we elect to address Unocal's specific arguments concerning numerosity, predominance, and superiority for three reasons.

First, the dueling experts issue goes beyond clarifying the proper burden of proof. Second, if each requirement for class certification cannot be affirmed under even the trial court's "some reasonable evidence" standard, then certification on remand would be impossible under the higher preponderance

2. At oral argument, Unocal conceded that if the case is remanded for further findings, the trial

standard, unless the trial court accepts additional evidence. *See U.S. Cellular Corp. v. City of Wichita Falls*, 364 F.3d 250, 259 (5th Cir.2004) (noting that "preponderance of the evidence" is a higher standard than "some reasonable evidence"). Third, addressing legal issues inherent in certain of Unocal's arguments, which will likely arise on remand, may facilitate further proceedings.

## IV. Rule 23(a)(1): Numerosity

On appeal, Unocal does not contend plaintiffs failed to establish the requirements of commonality, typicality, or fair and adequate representation under C.R.C.P. 23(a)(1), (2), and (3), respectively.[2] Rather, within the context of the C.R.C.P. 23(a)(1) numerosity requirement, it argues that the trial court abused its discretion in four ways: (1) failing to resolve conflicting expert testimony regarding the contamination of the contiguous properties out of a mistaken concern over addressing the merits, thereby certifying an unidentifiable class; (2) "shifting the burden of proof to Unocal"; (3) failing to find that the easement property class met the numerosity requirement independent of the contiguous property class; and (4) "ruling alternatively that a stigma claim could be asserted even if the [contiguous] properties were not contaminated." We agree with the first contention, need not address the second contention, and reject the other two.

### A. Conflicting Expert Testimony

Unocal raises an issue of first impression in Colorado by contending the trial court "improperly constrained its rigorous analysis" of conflicting expert opinions concerning "whether class members had contaminated properties out of a mistaken belief it could not examine the merits of the case." According to Unocal, such injury determines an identifiable class.

#### 1. Colorado Case Law

Colorado appellate decisions do not specifically address whether trial courts should resolve conflicting expert opinion testimony

court need not revisit these three requirements.

that is potentially determinative of class certification. However, several opinions suggest that some inquiry into the merits is permissible at the class certification stage.

In *Benzing*, 206 P.3d at 818, our supreme court said that "although the [trial] court may analyze the substantive claims and defenses that will be raised to determine whether class certification is appropriate, it cannot prejudge the merits of the case." But in the context of C.R.C.P. 23(b)(3)'s predominance requirement, it explained that "[s]ome inquiry into the plaintiff's theory of the case . . . is necessary to ensure that common class issues predominate over individual ones." *Id.* at 820.

Cases from divisions of this court encourage "prob[ing] behind the pleadings before coming to rest on the certification question." *LaBerenz v. Am. Family Mut. Ins. Co.*, 181 P.3d 328, 334 (Colo.App.2007); *see Medina*, 121 P.3d at 348 ("[I]n making this determination, it is often necessary to consider the substantive claims and defenses of the parties and the essential elements of those claims and defenses."); *Clark v. Farmers Ins. Exch.*, 117 P.3d 26, 31 (Colo.App.2004) ("This analysis may include consideration of the merits of the claims, but without actually deciding them." (internal citations omitted)); *Villa Sierra Condo. Ass'n v. Field Corp.*, 787 P.2d 661, 664–65 (Colo.App.1990) ("[T]he determination of an action's class status may require more than a review of the pleadings; its resolution may well demand consideration of the nature of the evidence that will be presented."), *superseded by statute on other grounds as stated in Heritage Village Owners Ass'n v. Golden Heritage Investors, Ltd.*, 89 P.3d 513, 515–16 (Colo.App.2004).

■ No Colorado Supreme Court decision has disapproved of these statements. Indeed, in *Benzing* the court acknowledged the assertion "that individual inquiries as to whether the defendants caused injury to each of the class members might be required," and could defeat predominance. 206 P.3d at 819.

References to considering "the substantive claims," "the merits of the claim," and "the nature of the evidence" cast doubt on the trial court's refusal to resolve the expert issue concerning certification of the contiguous property class. However, we must look elsewhere for a specific answer to the question of resolving conflicting expert testimony that bears on the certification decision.

### 2. Federal Case Law

#### a. United States Supreme Court Precedent

Supreme Court decisions recognize the propriety of some inquiry into the merits at the certification stage. *See Falcon*, 457 U.S. at 160, 102 S.Ct. 2364; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

In *Livesay*, while addressing the pre-Rule 23(f) appealability of an order denying class certification, the Court explained that " '[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. . . . The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits. . . . '" 437 U.S. at 469 n. 12, 98 S.Ct. 2454 (quoting 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3911, at 485 n. 45 (1976)).

Likewise, before announcing its "rigorous analysis" rubric, discussed *supra*, the *Falcon* Court stated that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." 457 U.S. at 160, 102 S.Ct. 2364; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (amendments to Rule 23 "invite[ ] a close look at the case before it is accepted as a class action . . . ." (internal quotation marks omitted)); *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ("careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains . . . indispensible.").

Such inquiry is not foreclosed by *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), relied on by the trial court in its certification order, where the Court admonished that "nothing in either the language or history of Rule 23 . . .

gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." This statement, also cited by some divisions of this court, *see, e.g., LaBerenz,* 181 P.3d at 334, "had nothing to do with determining the requirements for class certification," but rather "was concerned with which side should bear the cost of notice to the class." *IPO,* 471 F.3d at 33; *see also Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365–66 (4th Cir.2004) ("*Eisen* simply restricts a court from expanding the Rule 23 certification analysis to include consideration of whether the proposed class is likely to prevail ultimately on the merits."); *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 677 (7th Cir.2001) ("[N]othing in … *Eisen,* prevents the district court from looking beneath the surface of a complaint to conduct the inquiries identified in that rule and exercise the discretion it confers.").

Other than these few cases, the Supreme Court has not further addressed "a preliminary inquiry into the merits" in the context of class certification since *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140, and no case has explained how trial courts are to treat conflicting expert testimony concerning the Rule 23 requirements.

### b. Federal Court of Appeals Precedent

In *IPO,* where class certification turned in part on conflicting expert testimony, the Second Circuit recognized that the majority of federal circuit courts to have considered the question require trial courts at the class certification stage " 'to *resolve* disputes concerning the factual setting of the case,' including 'the resolution of expert disputes concerning the import of evidence.' " 471 F.3d at 38 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 575 (8th Cir.2005)) (emphasis in original). In explaining the majority view, *IPO*

relied on three federal circuit cases specifically addressing expert testimony.[3]

The *IPO* court explained that the trial court must resolve factual disputes, including conflicting expert testimony, by considering "all of the relevant evidence admitted at the class certification stage," and make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues." 471 F.3d at 41–42; *see also West v. Prudential Securities, Inc.,* 282 F.3d 935, 938 (7th Cir.2002) (admonishing that trial court's neglecting to resolve disputes between experts "amounts to a delegation of judicial power to the plaintiffs, who can obtain class certification just by hiring a competent expert."). It explained that trial courts "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *IPO,* 471 F.3d at 41.

The federal circuit courts to have addressed this issue since *IPO* follow its approach by subjecting expert testimony at the class certification stage to rigorous analysis and requiring the trial court to resolve any dispositive dispute, even disputes implicating an expert's credibility. *See Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1359 (11th Cir.2009) (concluding trial court abused its discretion by not certifying class because, in part, it "accepted the employees' expert testimony without examining it or explaining its affect [sic] on the predominance analysis."); *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d at 323–24 ("Weighing conflicting expert testimony at the certification stage … may be integral to the rigorous analysis Rule 23 demands."); *In re New Motor Vehicles Canadian Export Antitrust Litigation,* 522 F.3d 6, 25 (1st Cir.2008) ("[A] searching inquiry is in order where there are not only disputed basic facts, but also a novel theory of legally cognizable injury."); *see also Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1181 (9th Cir.2007) (modifying opinion to

---

**3.** *See* 471 F.3d at 38 (citing *In re PolyMedica Corp. Securities Litigation,* 432 F.3d 1, 5 (1st Cir.2005) (rejecting view that "a district court may not weigh conflicting expert evidence or engage in statistical dueling of experts." (internal quotation marks omitted)); *Blades v. Monsanto Co.,* 400 F.3d 562, 575 (8th Cir.2005); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259

F.3d 154, 166, 187 (3d Cir.2001) (holding court may examine factual and legal issues at certification stage and rejecting as insufficient plaintiff's contention that "their expert could calculate the amount of damages each class member sustained thereby removing proof of injury as an obstacle to certification.")).

omit citations to cases disavowed by *IPO* that appeared in original opinion), *reh'g en banc granted,* 556 F.3d 919 (9th Cir.2009).

Several states also follow the approach of *IPO* and its progeny to resolve conflicting evidence that bears on the Rule 23 requirements. *See, e.g., Alfa Life Ins. Corp. v. Hughes,* 861 So.2d 1088, 1099 (Ala.2003); *Cruz v. Unilock Chicago,* 383 Ill.App.3d 752, 322 Ill.Dec. 831, 892 N.E.2d 78, 92 (2008); *Dragon v. Vanguard Indus., Inc.,* 277 Kan. 776, 89 P.3d 908, 914 (2004); *Whitaker,* 764 N.W.2d at 636; *Craft v. Philip Morris Cos.,* 190 S.W.3d 368, 377 (Mo.Ct.App.2005); *Cantwell v. J & R Properties Unlimited, Inc.,* 155 N.H. 508, 924 A.2d 355, 359 (2007); *Harvell v. Goodyear Tire and Rubber Co.,* 164 P.3d 1028, 1043–44 (Okla.2006). *But cf. In re South Dakota Microsoft Antitrust Litigation,* 657 N.W.2d 668, 675 (S.D.2003) (When dealing with dueling experts at certification stage, "the [trial] court may be assisted by borrowing concepts from the standard which this Court routinely uses for determining the admissibility of purported expert evidence; that being the standard set forth in *Daubert* . . . .").

Earlier cases to the contrary frequently rely on *In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124 (2d Cir.2001), and *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283 (2d Cir.1999). *See, e.g., Howe v. Microsoft Corp.,* 656 N.W.2d 285, 294–95 (N.D.2003). Both *Visa Check* and *Caridad* were disapproved of in *IPO,* 471 F.3d at 35–36.

■ Based on these decisions, we are persuaded that when faced with conflicting expert testimony on a question potentially dispositive of class certification, a trial court must "compare the relative weight of expert opinions in ruling on a motion for class certification." *In re Urethane Antitrust Litigation,* 251 F.R.D. 629, 637 (D.Kan.2008). Because "[t]he district court may be persuaded by the testimony of either (or neither) party's expert with respect to whether a certification requirement is met," such testimony "should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should

not be excluded, under *Daubert* or for any other reason." *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d at 323.

■ Our resolution is not foreclosed by the admonition in *Benzing,* 206 P.3d at 818, that the trial court must avoid "prejudg[ing] the merits of the case" at the class certification stage. The supreme court clarified that trial courts "may analyze the substantive claims and defenses" before certification, *id.,* but "may not determine whether the class will ultimately succeed in establishing each element necessary to prove its claims." *Id.* at 820. This understanding of Rule 23 aligns with lower federal court cases holding that a certification stage determination "would not bind the ultimate fact-finder." *IPO,* 471 F.3d at 38; *accord In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d at 324 ("A court's determination that an expert's opinion is persuasive or unpersuasive on a Rule 23 requirement does not preclude a different view at the merits stage of the case."); *Gariety,* 368 F.3d at 366 ("The jury or factfinder can be given free hand to find all of the facts required to render a verdict on the merits, and if its finding on any fact differs from a finding made in connection with class action certification, the ultimate factfinder's finding on the merits will govern the judgment.").

Nor are we persuaded otherwise by the differences between C.R.C.P. 23 and its federal counterpart, which plaintiffs contend preclude following *IPO* and its progeny. The 2003 amendments to Fed.R.Civ.P. 23 removed from Rule 23(c)(1)(C) the provision that class certification "may be conditional," and in Rule 23(c)(1)(A) replaced the provision requiring that a certification decision be made "as soon as practicable" with the phrase, "at an early practicable time." *See IPO,* 471 F.3d at 39.

Colorado has not adopted these changes to C.R.C.P. 23. Records of the Colorado Supreme Court Rules Committee, which plaintiffs ask us to consider, are treated as files of the supreme court. *People v. Aleem,* 149 P.3d 765, 783 (Colo.2007). While we take judicial notice of those records, they are uninformative on why these federal changes were not adopted.

But in any event, we do not perceive these changes to the federal rule as necessary predicates for requiring trial courts to rigorously analyze the evidence favoring class certification, including conflicting expert testimony. *See* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 113 n. 54 (2009) (citing *IPO* and explaining, "The three-judge panel sought to explain its disavowal of circuit precedent . . . by reference to the intervening 2003 amendments to Rule 23. . . . This explanation is a considerable stretch, for the 2003 amendments did not so much make new law for class certification as they confirmed practices extant at the time . . . ." (internal citation omitted)).[4]

### 3. Application

■ Whether any asbestos migrated to the contiguous properties and, if so, whether it posed a risk were hotly contested. Plaintiffs' sole expert witness, Dr. Spear, testified in deposition that "during the pipeline removal . . . there was [sic] asbestos fibers released throughout th[e] easement. They were released to the air" and "soil." He added that "the manner [of pipe removal] . . . rendered much of that material friable," meaning subject to inhalation, and that the "fibers are going to be highly aerodynamic," enabling them to "travel more than five miles." However, he admitted he had not visited the contiguous properties and did not know whether asbestos had been found on any of them.

He acknowledged having relied on Dr. Ganesan's air diffusion model, as well as on his own visits to the easement properties, examination of documents, review of scientific literature, and his similar work on asbestos cases in Montana. That model contained assumptions which Dr. Spear did not testify to having independently verified, including: the pipeline was uniformly ten inches in diameter; one-half of the pipewrap was removed at the excavation site through the excavation process; the pipewrap contained three million asbestos fibers per square centimeter; twenty percent of these fibers were friable; and one-half of the friable fibers became airborne. Further, Dr. Ganesan's model projected the asbestos migration based on a twelve-hour period during a particular day of excavation and removal, which Unocal contends is outside the limitations period.

In contrast, one of Unocal's experts, Roberts, testified that much of the asbestos-containing pipewrap was transported to and disposed of at Merino Station, "a storage and pumping transfer facility" owned by Unocal; that the asbestos "was nonfriable"; and that the pipewrap was not uniformly removed from the pipe. Unocal's other expert, Dr. Kerger, testified that the asbestos was non-friable; that it was "adherent to tar" on the pipe; and thus "wasn't flyaway." He also challenged Dr. Ganesan's model as relying on faulty assumptions regarding wind direction, volume of asbestos material scraped off from the pipe, pipe diameter, fiber count, and the "wetting" of the asbestos material.

The trial court declined to resolve this conflicting expert testimony, explaining, "A class certification hearing is not the proper time for the court to decide between conflicting expert testimony and a court cannot resolve any conflict between expert evidence at this time." Instead, the court determined that certification was appropriate under its "some reasonable evidence" standard. This was an abuse of discretion.

Accordingly, on remand the trial court shall weigh the conflicting testimony and make specific findings, under the preponderance of the evidence standard, concerning alleged direct contamination of the contiguous properties, but only to the extent neces-

---

4. As to the first change, the "may be conditional" phrase was deleted because "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed.R.Civ.P. 23(c)(1) advisory committee's note to 2003 amendments. Nevertheless, the right to seek amendment of the certification ruling is preserved. The second change was made because "[t]he 'as soon as practicable' exaction neither reflect[ed] prevailing practice nor capture[d] the many valid reasons that may justify deferring the initial certification decision. Time may be needed to gather information necessary to make the certification decision." *Id.* (internal citation omitted). These reasons do not illuminate the need to weigh disputes among experts.

sary to deciding whether an identifiable class of those property owners has been established.[5]

## B. Whether the Trial Court Shifted the Burden of Proof to Unocal

Because of the remand, we need not address Unocal's contention that the trial court improperly shifted the burden of proof to it at the class certification stage. The certification order correctly states that "Plaintiffs bear the burden of proving each of the elements under both Rules 23(a) and (b)(3)." *See Ammons*, 897 P.2d at 862. We have no reason to doubt that the trial court will hold plaintiffs to their burden on remand.

## C. Size of the Easement Property Class

Unocal argues that the trial court impermissibly "combined the[ ] two classes to obtain 300 potential class members," and that the easement property class alone is too small to be certified.[6] As to its first argument, the trial court found "that *both* subclasses meet the numerosity requirement." (emphasis added) As to its second argument, for the following reasons we cannot say, as a matter of law, that the easement property class is too small to be certified.

■■■ "A party seeking class certification is required to establish by competent evidence that the class is sufficiently large to render joinder impracticable." *LaBerenz*, 181 P.3d at 334. "The actual size of the defined class is a significant factor in such determination, and mere speculation as to size is insufficient." *W.V. Kniffin v. Colo. W. Dev. Co.*, 622 P.2d 586, 592 (Colo.App.1980). "[A] court may consider reasonable inferences that can be drawn from the facts before it" when determining whether the numerosity requirement is met. *LaBerenz*, 181 P.3d at 334. When numerosity is a close question, the court should find in favor of the class proponent asserting numerosity in light of the court's option to later decertify. *See*

*id.* at 338 (citing *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 232 S.W.3d 444, 450 (2006)).

■■■ Here, the parties agree that the easement property class, as determined from real estate records, consists of at least sixty-six landowners. The trial court acknowledged that Unocal had identified sixty-six easement property owners, which is unlikely to change on remand.

■■■ "[T]he difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, at 247 (4th ed.2002); *see also Chandler v. Southwest Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D.Ill.1995) ("[W]hether the numerosity requirement is satisfied is extremely fact-specific. Courts have granted class certification to groups smaller than 30, and denied class certification in cases where the proposed class exceeded 100 members." (internal citation omitted)).

Therefore, while we conclude that the size of the easement property class does not preclude certification as a matter of law, on remand the trial court shall make specific findings on the numerosity of the proposed easement property class, using the preponderance of the evidence standard.

## D. Certification Based on Stigma

■■■ Unocal argues that the contiguous property class could not be certified on the basis of stigma if, as it urges, the trial court finds the testimony of plaintiffs' expert on direct contamination of those properties to be unpersuasive. Although the trial court found that the parties' experts "agree that asbestos can create a stigma to real property," plaintiffs have not pleaded a separate stigma claim. Nevertheless, we address this argument because it could arise on remand if the trial court so held, and in that context would

---

5. "An expert who testifies, for example, that every plaintiff has suffered injury is in effect testifying that injury may be established by common proof." Kermit Roosevelt III, *Defeating Class Certification in Securities Fraud Actions*, 22 Rev. Litig. 405, 425 (2003).

6. Because Unocal does not dispute the size of the contiguous property class or argue that it lacks numerosity, that question need not be addressed on remand.

present a question of law concerning the scope of plaintiffs' nuisance claim.

Plaintiffs have asserted a nuisance claim against Unocal on the basis that "[t]he release of asbestos ... from the Easement and pipeline have [sic] caused an unreasonable interference with the use and enjoyment of Plaintiffs' and Class Members' properties," and the trial court recognized that "plaintiffs argue that proximity to the asbestos is a nuisance." We conclude that if the court on remand rejects plaintiffs' expert testimony that the contiguous properties are contaminated, certification of the contiguous property class based on a nuisance theory is not thereby precluded as a matter of law.

■ Nuisance does not require physical change to or invasion of property. *See, e.g., Allison v. Smith,* 695 P.2d 791, 794 (Colo. App.1984). Rather, "[o]ther circumstances may properly be considered and relied upon by a jury to find nuisance liability if these circumstances result from the defendant's activities and cause fear, anxiety, discomfort or some other condition that substantially interferes with the plaintiff's use and enjoyment of property." *Cook v. Rockwell Int'l Corp.,* 273 F.Supp.2d 1175, 1203 (D.Colo.2003); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 88, at 629 (5th ed. 1984) ("Fears and feelings common to most of the community are to be considered; and the dread of contagion from a pesthouse, common to ordinary citizens, may make it a nuisance, although there is no foundation in scientific fact."); Restatement (Second) of Torts § 821 F cmt. f (1965) ("In determining whether the harm would be suffered by a normal member of the community, fears and other mental reactions common to the community are to be taken into account, even though they may be without scientific foundation or other support in fact.").

We acknowledge the statement that Colorado landowners "are not entitled to recover for any claimed diminution in their property's value caused by any of [a] defendant's actions *that do not constitute a nuisance or other actionable wrong." Staley v. Sagel,* 841 P.2d 379, 382 (Colo.App.1992) (emphasis added). But in that case, compliance with an injunction extinguished the nuisance claim. Here, for purposes of class certification Unocal has not challenged the trial court's finding that asbestos was and is present along the easements.

Therefore, if on remand the trial court resolves the conflicting expert testimony in Unocal's favor, then it shall make specific findings, by a preponderance of the evidence, weighing plaintiffs' proof that the mere proximity of the contiguous properties to the easement properties results in an unreasonable and substantial interference with use and enjoyment of the contiguous properties. Such interference could warrant class certification for the owners of those properties. *See Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 391–95 (Colo.2001) (nuisance complaint based on increased voltage in above-ground wire sufficiently alleged unreasonable and substantial interference with use and enjoyment of land).

## V. Rule 23(b)(3): Predominance

Unocal next contends that because individualized proof will be necessary to determine the class members' property damages and to assess its affirmative defenses, the trial court abused its discretion in finding C.R.C.P. 23(b)(3)'s predominance requirement established as to both classes. We cannot resolve this contention for lack of any specific findings as to individualized damages evidence and because the trial court declined vigorously to analyze evidence as to affirmative defenses. Nevertheless, since these questions will likely arise on remand, we address whether individualized proof as to class members' damages and Unocal's affirmative defenses precludes class certification, as a matter of law, and conclude that it does not.[7] *See Westfield Dev. Co. v. Rifle Inv. Assocs.,* 786 P.2d 1112, 1118 (Colo.1990) (addressing

---

7. Our conclusions are not intended to predetermine the trial court's new findings on remand under the preponderance of the evidence standard or its independent analysis of the C.R.C.P. 23 predominance requirement using those new findings. *Cf. Blood v. Qwest Services Corp.,* 224 P.3d 301, 336 (Colo.App. 2009) (requiring trial court on remand to conduct independent analysis of constitutionality of exemplary damages award before increasing such award).

issues likely to arise on remand in interest of judicial economy).

After listing eleven "common issues of law and fact,"[8] the court identified six "questions of fact and law which are not common to all class members," including whether certain landowners (1) had time-barred claims; (2) expressly released Unocal from liability; (3) waived any right to seek damages; (4) failed to mitigate damages; (5) received from Unocal notice of the asbestos release; and (6) have differing amounts of damages. However, the court concluded that the common issues of law and fact predominated over the individual issues, thereby justifying certification of both classes.

### A. Individualized Evidence of Class Members' Damages

Unocal points to variations, including no reduction of rental value as farm land, no change in crop productivity, landowners whose income from their properties increased, and some landowners who no longer ride recreational vehicles on their properties.

■ Despite finding that class members have "differing amounts of damages," the trial court did not separately address individualized evidence of damages. Rather, it treated the entire question only as a matter of affirmative defenses, perhaps because Unocal pleaded "lack of damages" as a defense. However, since individualized damages bear on the predominance of common issues, the trial court must address Unocal's damages argument separately from its affirmative defenses argument.

■ Variations in damages suffered by class members often occur in mass environ-

mental torts, and do not prevent class certification as a matter of law. *See, e.g., Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 67 (S.D.Ohio 1991) (certifying class in radioactive exposure case despite possibility of differing "need[s] for medical monitoring" and "impact[s] of the plant's operations on real property values. . . ."). Indeed, "the predominance prong of the C.R.C.P. 23(b)(3) inquiry usually involves liability, not damages," and the "need for some proof of individual damages does not preclude certification" under the rule. *Buckley Powder Co. v. State,* 70 P.3d 547, 554 (Colo.App.2002); *cf. Kuhn v. State Dep't of Revenue,* 817 P.2d 101, 105 (Colo.1991) ("Nor does the fact that, if the class prevails, each class member will be owed a different refund amount defeat typicality."); *see also* Newberg, *supra,* § 4:25, at 42 (Supp.2008) (collecting cases and recognizing that "presence of individualized damages does not prevent a finding that the common issues in the case predominate." (internal quotation marks omitted)). *But see Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 306–07 (5th Cir.2003) (recognizing that "[e]ven wide disparity among class members as to the amount of damages suffered does not necessarily mean that class certification is inappropriate," yet nevertheless affirming denial of class certification because "plaintiffs' damages formula . . . cannot reasonably approximate the actual damages suffered by the class members. . . .").

■ Further, the impact of individualized damages evidence can sometimes be reduced by creating subclasses, which lies within the trial court's discretion under C.R.C.P. 23(c)(4). *See Villa Sierra,* 787 P.2d at 666

---

8. The trial court listed the common issues of law and fact as "(1) whether any type of toxic chemicals and substances have been or are being released by the defendants on the class members' properties; (2) whether the removal of the pipeline resulted in the release of a material containing asbestos; (3) whether the asbestos contaminated the class members' properties; (4) whether the activities of the defendants caused the contamination of class members' properties; (5) whether the release of asbestos and other materials from the pipeline onto the class members' properties constitutes a trespass; (6) whether the release of asbestos and other materials from the pipeline onto the class members' properties con-

stitutes a nuisance; (7) whether the defendants acted negligently or recklessly by allowing asbestos to be released during the removal of the pipeline; (8) whether the defendants acted negligently or recklessly by failing to remediate the release of asbestos or by failing to warn the property owners of the presence of asbestos; (9) whether the class members have suffered loss of use, annoyance and discomfort, and loss of use and enjoyment of their properties as a result of the defendants' conduct; (10) whether the release of asbestos has caused a diminution in value of the class members' properties; and (11) whether the defendants have been unjustly enriched."

(although existence of issue not affecting entire class "might justify the creation of a subclass under C.R.C.P. 23(c), it would not constitute a predominant *individual* issue." (emphasis in original)).

Therefore, we conclude that the variation as argued by Unocal does not preclude a finding that common issues predominate, as a matter of law. Nevertheless, on remand the trial court shall separately address individualized evidence of damages, including possible use of subclasses, and make findings by a preponderance of the evidence.

### B. Unocal's Affirmative Defenses

Unocal's answer pleaded eleven affirmative defenses, one or more of which it asserts will apply to fifty-nine of the sixty-six easement property class members, as well as to an unspecified number of the contiguous properties. Examples of these defenses include statute of limitations, laches, estoppel, assumption of risk, and failure to mitigate damages. Although plaintiffs contest the total number of properties subject to one or more of these defenses, they do not dispute that various property owners are subject to certain defenses.

■ The four non-exhaustive predominance factors listed in C.R.C.P. 23(b)(3) provide a framework for analyzing affirmative defenses under the predominance and superiority prongs of the rule. *See, e.g., Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir.2004). Because their application varies widely from case to case, affirmative defenses do not preclude predominance, as a matter of law. *Compare Bruhl v. Price Waterhousecoopers Int'l,* 257 F.R.D. 684, 697–98 (S.D.Fla.2008) (granting class certification despite defense that "an investor-by-investor analysis is required to determine whether a 'special factual relationship' exists between each Citco Director and the specific investor."), *with Cunningham Charter Corp. v. Learjet, Inc.,* 258 F.R.D. 320, 333–34 (S.D.Ill. 2009) (denying class certification under Rule

23(b)(3), in part, because the court would have to "conduct individualized mini-trials" regarding the defense of untimely claim filing by certain class members).

Here, the trial court did not rigorously analyze the evidence that Unocal asserts is inherently individualized in its affirmative defenses. For example, the court declined to consider that some easement property owners did not have the pipe removed from their properties. Instead, the court merely noted that the defenses were "untested" and, as with the conflicting expert testimony, "must be left to the merits of the case." Plaintiffs have cited no authority, nor have we found any, applying an "untested" standard to foreclose a predominance inquiry into affirmative defenses.

■ Refusal even to address Unocal's defenses out of concern over invading the merits was an abuse of discretion.[9] *See* Newberg, *supra,* § 4:25, at 159 ("[T]he question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense."); *see also Benzing,* 206 P.3d at 818 (trial court should consider the "substantive claims and defenses" of the parties during its certification decision); *Medina,* 121 P.3d at 345 (same). Therefore, further findings are required on the affirmative defenses, regardless of some overlap with the merits. *See Mowbray,* 208 F.3d at 296 ("[C]ourts confronting a collocation of divergent ... defenses regularly apply the totality-of-the-circumstances test ... [to all] types of Rule 23(b)(3) class actions.").

On remand, the trial court should look first at whether plaintiffs have made "an initial demonstration that a class action is appropriate...." *Villa Sierra,* 787 P.2d at 666. If so, then Unocal must "describe in some detail the nature of the evidence" that it intends to produce on its defenses, "so that the court may render an informed judgment upon the

---

**9.** The trial court cited *Cook,* 151 F.R.D. at 386, for the proposition that "[p]otential affirmative defenses are not to be considered during the class certification process." But *Cook* is inconsistent not only with Colorado law, but also with the prevailing federal view. *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295 (1st Cir.2000) ("[W]e regard the law as settled that affirmative defenses should be considered in making class certification decisions.").

predominance of common legal or factual issues over individual ones." *Id.*

■ Speculative or conjectural defenses need not be considered because they are inadequate to overcome issues of law and fact that are otherwise sufficiently common to merit class certification. *See Mowbray,* 208 F.3d at 297; *cf. Kuhn,* 817 P.2d at 106 ("[T]he state's argument that some class members will choose not to accept refunds is speculative at best and, therefore, is not a reasonable argument against typicality."). Whether defenses of greater substance preclude predominance should be weighed using the "totality-of-the-circumstances test." *Mowbray,* 208 F.3d at 296 (collecting cases). Although this test does not require the court to consider every possible individualized issue that might arise from a particular affirmative defense, it does mandate a "case-specific analysis," consistent with *Falcon's* "rigorous analysis" rubric. *Id.* at 297.

■ Moreover, as noted *supra* concerning damages, if a defendant "demonstrate[s] in the future that individualized [defense] problems actually shift the balance and undercut the predominance of common issues, the district court may modify its class certification order (or even decertify the class)." *Mowbray,* 208 F.3d at 297 n. 6; *see Benzing,* 206 P.3d at 818 (discussing trial court's ability to decertify class); *Medina,* 121 P.3d at 349 (discussing trial court's ability to create subclasses under C.R.C.P. 23(c)(4)); *Villa Sierra,* 787 P.2d at 667 (same).

■ Accordingly, although we conclude that the affirmative defenses recognized by the trial court do not preclude predominance as a matter of law, on remand before finding predominance the trial court must make findings by a preponderance of the evidence concerning these affirmative defenses, including the use of subclasses, and determine whether common issues nevertheless predominate.

### VI. Rule 23(b)(3): Superiority

■ Lastly, Unocal contends the trial court abused its discretion by certifying the easement property class because it failed to "make findings on the superiority of the CDPHE remediation program." Our remand for further findings moots this contention. Nevertheless, as with predominance, we consider whether the largely undisputed evidence concerning the remediation program precludes superiority, as a matter of law, and for the following reasons conclude that it does not.

■ C.R.C.P. 23(b)(3) requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." "The fact intensive superiority inquiry seeks to determine the best mechanism for identifying claimants and processing their claims." *Buckley Powder Co.,* 70 P.3d at 554. Although the trial court has broad discretion when determining whether the class action is the superior means of adjudication, "if the parties could obtain the same relief without class certification, then a class is not the superior method as required by C.R.C.P. 23(b)(3), and certification should be denied." *Id.*

Plaintiffs sought and the trial court granted certification of the easement property class under C.R.C.P. 23(b)(3), which "is appropriate for classes seeking primarily monetary damages." *State v. Buckley Powder Co.,* 945 P.2d 841, 845 (Colo.1997). Unocal's argument that the CDPHE remediation program is superior to the class action ignores the class members' right to seek damages where, as alleged here, a trespass to land has been committed. *See, e.g., Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1069 (Colo.App.1990). Further, although not a rule of "universal application," plaintiffs' request for damages based on diminution in market value is the "ordinary rule" for injuries to real property. *Bd. of County Comm'rs v. Slovek,* 723 P.2d 1309, 1314 (Colo.1986).

*Kamm v. California City Dev. Co.,* 509 F.2d 205, 212 (9th Cir.1975), on which Unocal relies for the notion that class certification is not superior where other relief has been realized, does not preclude a finding of superiority because the potential class members in that case received restitution through settlement of a state action unrelated to the proposed federal class action. In contrast,

here no such other action has been filed, no settlement has been made, and no restitution has been paid. *See also* Newberg, *supra*, § 4:33, at 291 (describing "deference to an administrative agency," in lieu of class action, as "unusual"). Indeed, Unocal does not assert that the CDPHE remediation program will ever yield monetary compensation to any class members.

Nevertheless, on remand the trial court shall make specific findings on the superiority of the class action, using the preponderance of the evidence standard, with respect to the CDPHE remediation program.

## VII. Conclusion

In sum, we reject Unocal's request for reversal of the order certifying the two classes. However, our conclusions that the burden of proof is by a preponderance of the evidence and that the trial court must resolve the conflicting expert testimony, address the individualized damages evidence, and analyze Unocal's affirmative defenses, require the order to be vacated and the case remanded for further findings. The court may, in its discretion, take additional evidence to the extent necessary because of the standards announced in this opinion.

On remand, the trial court shall make findings, under a preponderance standard, on the following issues:

- Does expert testimony establish an identifiable class of contiguous property owners based on contamination by wind dispersion, proximity to the easement properties, or both;
- Is a class of easement property owners sufficiently numerous;
- Has predominance of common issues been established as to either contiguous property owners or easement property owners, despite Unocal's assertions that both damages and affirmative defenses involve individualized proof;
- Has superiority of an easement property owner class been established, notwith-

standing the CDPHE remediation program; and

- Have plaintiffs otherwise established the requirements of C.R.C.P. 23 as to either or both classes, except as to issues abandoned by Unocal? [10]

The order certifying the two plaintiff classes is vacated and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge GABRIEL concur.

---

10. Certain findings may eliminate the need to make other findings. For example, if the court determines that no identifiable class of contigu-

ous property owners has been shown based on either direct contamination or proximity, it need not further address those owners.