No. 20659.

QUANDARY LAND DEVELOPMENT COMPANY *v.*
VERNON V. PORTER.
(408 P.2d 978)

Decided December 27, 1965.

VICTOR F. CREPEAU, for plaintiff in error.

SALAZAR & DELANEY, CARL L. HARTHUN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE Quandary Land Development Company, a Colorado corporation, hereinafter referred to as Quandary or the Corporation, brought an action against its former president, Vernon V. Porter, hereinafter referred to by name or as the defendant. It sought to recover monies allegedly due it as a result of certain alleged acts of commission and omission on the part of Porter while he was employed by the Corporation. It also sought to secure a judgment on a note allegedly given by Porter for certain stock. Trial was had to the court without a jury. The litigable issues were incorporated into a pretrial order by the court. Following the trial, judgment was entered in favor of the Corporation on two of its four claims. Motion for a new trial was dispensed with.

The record discloses that during the month of November 1960, Mrs. Martha Belle Frank and the defendant, who admittedly were "very good friends" until their parting of the ways, conceived the idea of constructing the Quandary Inn and of developing certain lands owned by Mrs. Frank at Breckenridge, Colorado. On November 25, 1960, Mrs. Frank deposited her personal check in the amount of $700 in the Cherry Creek Bank in Denver, thereby opening a checking account in the name of Quandary Land and Development. The defendant was the sole person authorized to write checks on the account at that time. He was told by Mrs. Frank that he would be given a salary of $50 a week, and that he could further draw on the account to cover "expenses."

On January 12, 1961, the enterprise was formally incorporated. The defendant was elected as the president of the Corporation and was also appointed as its general manager. His salary was increased to $100 a week, retroactive to December 20, 1960. In addition, he was issued 75 shares of the Corporation's stock, while Mrs. Frank received 2,625 shares, and Stanford Hyman, the then corporate attorney and the third director, was issued one share.

The checking account opened on November 25, 1960 was continued with checks to be honored when written either in the name of "Quandary Land and Development" or "Quandary Land Development Company." Subsequent to incorportion, both Mrs. Frank and the defendant were authorized to draw on the account. What might be termed "normal business" checks were drawn thereafter by Porter along with certain questioned checks. Mrs. Frank also drew at least one non-business check herself. The evidence reveals that, except for a nominal sum deposited by Porter, Mrs. Frank was the sole contributor to the account. Defendant's position with Quandary was terminated at a special meeting of the directors held on December 8, 1961. All of the claims for conversion set out in the complaint arose out of alleged wrongful transactions committed by Porter during the period described.

Quandary assigns nine grounds for reversal which can be consolidated into four points as follows, viz:

(1) That the trial court committed error by not admitting Plaintiff's Exhibits Z-1 through Z-81 (excepting Z-12, Z-37, Z-60, Z-63, Z-68, Z-77 and Z-78) into evidence and in not entering judgment for the amounts shown to be due thereby;

(2) That it was error not to permit Quandary to amend its complaint so it could seek an accounting to conform to the evidence;

(3) That the defendant should have been held liable for penalties and interest charges levied on Quandary

for its failure properly to withhold from the salaries of its employees certain federal and state withholding and social security taxes; and,

(4) That the defendant should have been held liable in the amount of $93,614.76 on a promissory note allegedly given by him to cover the purchase price of additional stock in the Corporation.

The evidence is that Exhibits Z-1 through Z-81, referred to in the first assignment of error (except Z-77 drawn by Mrs. Frank), represent certain checks drawn by the defendant on Quandary's account during the period between December 10, 1960 through October 17, 1961. In addition to this group of checks, Porter wrote other checks designated as Plaintiff's Exhibits R and S, about which there are no issues raised on this writ of error.

As concerns the first ground urged for reversal, trial was had pursuant to the pre-trial order on the issue as to whether the defendant, while an officer of the Corporation, had converted to his own use proceeds from certain checks. The court found the defendant to be liable on Exhibits R and S only, less certain credits, with a net sum due of $3,470.85. As above indicated, no cross-error is assigned as to this amount. The court, however, without stating why, refused to admit Exhibits Z-16 through Z-81 (less the exceptions heretofore noted) when offered as a group. The court also subsequently refused to admit any of the exhibits from Z-1 to Z-11, and Z-13 to Z-15. It made no findings of fact and entered no judgment in favor of the Corporation in regard to certain amounts testified to as converted by Porter when he was cross-examined as to these exhibits.

■■ As to Exhibits Z-1 through Z-11, and Z-13 to Z-15, the record shows that they were checks written before the Quandary Land Development Company was incorporated. There is no showing that before its incorporation Quandary met the requirements necessary

to give it a *de facto* existence; [Cf. *Bonfils v. Hayes,* 70 Colo. 336, 339, 201 Pac. 677 (1921)], or that it made a *bona fide* attempt to incorporate before it actually did so and had attempted to use *de facto* corporate powers. This Corporation, therefore, had no standing to make any claim concerning those particular checks, even if Porter may have drawn some of them for his own account, and the trial court was correct in refusing their admission into evidence.

■■ As to Exhibits Z-18-36-59-62-75 and 80, which total $115.65, defendant admitted on cross-examination that he had written these checks for his personal use. As to these, of course, their rejection by the trial court was improper; but even though excluded, the court should have made a finding of liability and entered judgment thereon in the amount of $115.65. We so hold because the tort of conversion has been defined as the "unauthorized act of dominion or ownership * * * over the personal property belonging to another." *Bryon v. York Investment Co.,* 133 Colo. 418, 424, 296 P.2d 742 (1956). As to the other Z exhibits which it is asserted should have been admitted, we agree with the trial court's rejection thereof in that the Corporation failed to carry its burden of proof in asserting conversion by Porter of the sums represented thereby.

■ The second ground alleged as error is without merit. It appears that Quandary moved, at the close of its evidence, for permission to amend its pleadings by adding a claim for an accounting. The record indicates that the defendant immediately objected to such an amendment. The issues and the theories upon which such were to be tried, were clearly set out in the pre-trial order. Both parties had agreed to litigate on the theory of conversion. Quandary's motion, however, improperly called for the addition of a totally new claim. We find no abuse of discretion by the trial court when it denied the motion during trial. R.C.P. Colo. 15(b).

■ The third ground asserted, which relates to the

fourth claim in the complaint, is also without merit. Suffice it to say that we cannot hold as a matter of law that the record does not bear out the trial court's finding that Quandary failed to meet its burden of proof in its attempt to hold Porter liable for certain taxes as the Corporation's general manager. Although there might be a situation where a corporate official charged with the duty to withhold taxes could be held personally liable for failing to do so, this is not such a situation. In the instant case, Section 5 of the original Stockholder's Agreement dated January 12, 1961 specifically provided that the duties of the general manager were to be determined by the Board of Directors. Here the record is devoid of any evidence showing that Porter was charged by the directors with the asserted duty. Thus, although he could have made or authorized the deductions, he cannot be held liable for not so acting.

The last assignment of error concerns the claim on the note and the court's finding that there was no liability on the part of Porter thereon because the stock was a gift and thus Quandary failed to sustain its burden of proof.

The difficulty with the court's finding, however, is that though there is evidence that Mrs. Frank indicated that she had intended to make a gift of the stock to Porter at some time in the future, there is no evidence that she ever completed the gift. In fact, it is undisputed that the stock certificates, after being issued, were given immediately by Mrs. Frank to the then corporate attorney to hold for the Corporation. In other words, there was never a delivery of the stock to the purported donee by the donor. Defendant himself admitted that he had never received the certificates and that when he saw them at the trial, it was the second time he had done so.

Title to corporate stock in Colorado can only be transferred as provided by statute. See: C.R.S. '53, 31-9-1. The statutory methods are exclusive and any

attempt or desire to convey stock by other means merely results in a naked promise to transfer ownership in the future. See: *Brennen v. W. A. Wills, Ltd.*, 263 F.2d 1 (10th Cir. 1959), *cert. denied*, 360 U.S. 902, 79 S. Ct. 1284, 3 L. Ed.2d 1254 (1959), citing C.R.S. '53, 39-9-1 and 39-9-10; see also: *Goeddel v. Aircraft Finance, Inc.*, 152 Colo. 419, 382 P.2d 812 (1963), where *Brennen*, *supra* is cited with approval. Of course, a bare promise to make a gift *in futuro* is not enforceable. 24 Am. Jur. *Gifts* §§ 22-23, 38 C.J.S. Gifts § 16.

In summary, then, we hold that the trial court should have made findings of fact and entered a judgment in favor of the Corporation as to six of the Z exhibits and on remand it should do so and the judgment is affirmed as to the balance of that issue; further, the judgments as to the second point relating to the amendment to the complaint and as to the third issue concerning the taxes are affirmed; and, the judgment as to the fourth point relating to the ownership of the stock is reversed with directions to return the stock to the Corporation and to return Porter's note to him, thereby placing the parties in their original position in regard to this issue. The trial court is directed to enter orders as may be necessary to carry out the views expressed herein.

It is so ordered.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE McWILLIAMS concur.