541 P.2d 111 (1975)
Charles SPARKMAN, Plaintiff-Appellant,
v.
The EXCHANGE NATIONAL BANK OF COLORADO SPRINGS, Colorado, a national banking association, Defendant-Appellee.
No. 74-395.
Colorado Court of Appeals, Div. II.
July 22, 1975.
As Modified on Denial of Rehearing August 12, 1975.
Certiorari Granted October 27, 1975.
*112 Edward D. Cleveland, Colorado Springs, for plaintiff-appellant.
Spurgeon, Aman & Hanes, Richard W. Hanes, Colorado Springs, for defendant-appellee.
Selected for Official Publication.
PIERCE, Judge.
Plaintiff, a principal heir of one Sara A. Sparkman (decedent), brought this action to have set aside as null and void an instrument entitled "Trust Agreement," which purports to be an inter vivos trust executed by deceased prior to her death intestate. He also sought to have the defendant (Bank) declared a bailee of certain assets which had been placed in its custody pursuant to the terms of the purported trust agreement. The trial court found that the trust agreement was valid and that the Bank had properly administered the assets in accordance with the terms of the agreement. We reverse the judgment.
The instrument in one of its paragraphs states:
"WHEREAS, the Settlor has assigned, transferred and/or delivered to the Trustee the property described in Schedule `A,' attached hereto and made a part hereof."
The attached Schedule "A" was a list of bonds and stock certificates. However, the instrument also provided that the "Trustee shall keep securities and property registered in name of Settlor." It also gave the trustee broad powers in management of the trust assets, but required that the powers be exercised "as it may deem for the best interest of the beneficiary of this Trust, subject to and only with approval of said Settlor."
At the trial, the principal dispute between the parties was whether the instrument was non-testamentary. We need not consider this issue, because we hold that legal title to the stocks and bonds was never transferred to the trustee so as to fund the trust.
Among other determinations, the trial court found that "contemporaneously with the execution of said `Trust Agreement' the decedent transferred to the Defendant Exchange National Bank, as trustee, certain bonds and securities itemized in Schedule A to the `Trust Agreement' by delivering them to the Defendant with blank stock powers, signed by the decedent, attached." This finding cannot be upheld if it is unsupported by any evidence in the record or if the law as to what constitutes a "transfer" had been incorrectly applied. Anderson v. Cold Spring Tungsten, Inc., 170 Colo. 7, 458 P.2d 756. The finding is defective for both these reasons.

I.
Plaintiff's principal contention is that the court erred in finding that legal title to the stock certificate listed on Schedule "A" passed to the bank. We agree that attempted transfer of title to the stock certificates was ineffective because of noncomplaince with C.R.S.1963, 31-11-1 et seq.
The uncontradicted testimony of witness H. A. White, a former trust officer of the defendant bank, was that, at the time of execution of the original trust agreement, decedent gave the bank the unindorsed stock certificates and several printed forms entitled "Assignment Separate From Certificate." Mr. White testified that, at the time the forms were given by decedent to the trustee, the only writing on the forms was decedent's signature. The spaces for *113 the transferor's name, the transferee's name, number of shares transferred, name of the corporation issuing the stock, and the stock certificate number were left blank until the bank filled them in when the certificates were re-registered in the bank's name as trustee, in 1964. After all the certificates were re-registered, one of the signed blank forms still remained.
C.R.S.1963, 31-11-1, which was in effect at all times relevant hereto, in pertinent part, provided:
"(1)(a) Title to a certificate and to the shares represented thereby can be transferred only:
. . . . . .
"(c) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person." (emphasis supplied)
The statute applied to all the certificates of corporate stock listed in Schedule "A." C.R.S.1963, 31-11-21. This statutory method of transferring title to the corporate stock was exclusive and any attempt to convey stock by other means merely resulted in a promise to transfer ownership in the future. Quandary Land Development Co. v. Porter, 159 Colo. 8, 408 P.2d 978; C.R.S.1963, 31-11-10.
The legislative intent expressed by the statute promotes certainty by requiring that, prior to delivery of a stock certificate to a proposed transferee, there must exist a separate document, containing a written assignment, which describes the certificate sought to be transferred. No such written document was present here.
First, it is undisputed that, in this case, the description of the certificates to be transferred was not placed on the stock assignment forms until long after delivery of the forms to the bank. And further, although the "Trust Agreement" itself identifies the particular certificates, it cannot operate as the "separate document containing a written assignment of the certificate [s]," because it did not contain words of assignment. It merely states that decedent "has assigned, transferred and/or delivered" the property (emphasis supplied). Thus, the circumstances surrounding the delivery of the stocks did not meet the requirements of the statute and transfer of legal title never occurred. See In re Davis' Estate, 95 Ohio App. 452, 120 N. E.2d 907.
Nor does the trust document contain a provision that could be construed as a power of attorney to transfer the stock. Although Mr. White testified that the blank stock transfer forms were given to the bank at the same time that the stock certificates were given to the bank, there was no evidence that the stocks listed in Schedule "A" were the only stocks owned by decedent, nor was there any explanation as to why one signed blank form remained after all the stocks listed on Schedule "A" had been re-registered.
Therefore, we hold that the legal title to the stocks listed in Schedule "A" was never validly transferred to the trustee bank.
It has been argued that an exception has been created in this instance in that the evidence would readily show clear intent on the part of the decedent to transfer the title. The presence of this intent would then bring into play the provisions of C.R.S.1963, 31-11-9, and the personal representative of the decedent could now be made to carry out the ministerial act of proper transfer under the statute. That statute, however, allows this exception only "in the absence of an agreement to the contrary." Here, the trust agreement itself prohibited any such demand being made upon the decedent, during her lifetime, *114 or on her personal representative, at the present time.

II.
The bonds were also part of that article of the agreement which expressly stated that all items in Exhibit "A" should be kept registered in the name of the decedent and the Bank could act only with the approval of the decedent. Our search of the record does not support the trial court's finding that the legal title of the bonds was transferred. To the contrary, there is some evidence to indicate that the decedent never intended the Bank to take legal title to the bonds as trustee under this agreement, and there is nothing in the ambiguous "Trust Agreement" declaration quoted above that would effect transfer of legal title to the bonds. Furthermore, although the United States Treasury bills currently held by the Bank are payable to bearer, the record does not contain any evidence that the original bonds listed in Schedule "A," which were exchanged for the currently held bills, were payable to bearer. We therefore hold that delivery of the bonds was not sufficient to transfer legal title.

III.
Although the terms of the trust instrument itself probably did not render the trust illusory (see Denver National Bank v. Von Brecht, 137 Colo. 88, 322 P.2d 667; Hageman v. First National Bank, 32 Colo. App. 406, 514 P.2d 328), there was no effective transfer of legal title to any property to the intended trustee, and therefore, the trust described in that instrument was never actually created due to lack of funding. The trial court erred in holding to the contrary. See 1 A. Scott, Law of Trusts § 32.2 (3rd ed.); see also In re Estate of Granberry, 30 Colo.App. 590, 498 P.2d 960.
Judgment reversed.
SMITH and RULAND, JJ., concur.