**Trina GARCIA, Plaintiff–Appellee,**

v.

**MEDVED CHEVROLET, INC., d/b/a Medved Cadillac, Inc., d/b/a Medved Cadillac Oldsmobile, Inc., d/b/a Medved Chevrolet–GEO, Inc., d/b/a Medved Oldsmobile, Inc., d/b/a Medved Craig Chevrolet, Inc.; Medved Chevrolet South, Inc., d/b/a Medved Hummer South; Castle Rock Ford–Mercury, Inc., d/b/a Medved Ford Lincoln Mercury, Inc., d/b/a Medved Brutyn Ford Lincoln Mercury, Inc.; Medved Buick Pontiac GMC, Inc.; Lakewood Chrysler–Plymouth, Inc., d/b/a Medved Chrysler Jeep, Inc.; Medved Chrysler Jeep Dodge South, Inc.; Medved Chrysler Jeep Dodge, Inc.; Medved Pontiac Buick GMC, Inc.; Medved Suzuki North, Inc.; Medved Suzuki South, Inc.; and John Medved, individually, Defendants–Appellants.**

**No. 09CA1465.**

Colorado Court of Appeals,
Div. A.

Nov. 12, 2009.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

Hale Friesen, LLP, Daniel E. Friesen, Peter J. Krumholz, Denver, Colorado, for Plaintiff–Appellee.

Reilly Pozner LLP, Daniel M. Reilly, Larry Pozner, Anthony L. Giacomini, Molly H. Ferrer, Denver, Colorado; Holley, Albertson & Polk P.C., Dennis B. Polk, Golden, Colorado, for Defendants–Appellants.

Opinion by Judge GRAHAM.

We consider a petition for interlocutory appeal of class action certification pursuant to C.R.C.P. 23, together with the request of

plaintiff, Trina Garcia, on behalf of herself and all those similarly situated, to dismiss the petition as untimely. The petition seeks review of the trial court's order granting class certification in a suit against defendants, ten automobile dealerships, Medved Chevrolet, Inc.; Medved Chevrolet South, Inc.; Castle Rock Ford–Mercury, Inc.; Medved Buick Pontiac GMC, Inc.; Lakewood Chrysler–Plymouth, Inc.; Medved Chrysler Jeep Dodge South, Inc.; Medved Chrysler Jeep Dodge, Inc.; Medved Pontiac Buick GMC, Inc.; Medved Suzuki North, Inc.; and Medved Suzuki South, Inc.; and one individual, John Medved, for violation of the Colorado Consumer Protection Act (CCPA) by failing adequately to disclose the identity and cost of dealer-added aftermarket products in connection with the sale of new automobiles. We reverse and remand.

## I. Timeliness of Petition Seeking Review

We first consider the timeliness of the petition. Plaintiff has filed a motion seeking to dismiss defendants' petition for review, arguing that defendants missed a ten-day interlocutory appeal deadline imposed by section 13–20–901, C.R.S.2009. We will consider the petition because we deem it to have been timely filed.

The trial court's order granting class certification was entered on June 26, 2009. Defendants' petition was filed on July 13, 2009. We conclude that the petition was filed within ten days, excluding intervening weekend days and holidays. Our conclusion of timeliness requires us to construe both section 13–20–901 and our appellate rules.

When interpreting statutes, our primary task is to give effect to the General Assembly's intent by looking to a statute's plain language, and we construe the words of the statute based upon their commonly accepted meanings. *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 241 (Colo.2009) (citing *Reg'l Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995)). Where the language is plain and unambiguous, we need not resort to further canons of interpretation. *Frazier v. People,* 90 P.3d 807, 810 (Colo.2004).

We interpret rules of procedure consistently with principles of statutory construction. *People v. Stanley,* 169 P.3d 258, 260 (Colo.App.2007) (citing *People v. Shell,* 148 P.3d 162, 178 (Colo.2006)). A reviewing court must consider the rule as a whole and interpret it so as to give consistent, harmonious, and sensible effect to all its parts. *Leaffer v. Zarlengo,* 44 P.3d 1072, 1078 (Colo. 2002). However, if it is impossible to reconcile all the provisions of a rule, specific provisions typically prevail over general provisions. *Id.* (citing § 2–4–205, C.R.S.2009). We will not follow a literal interpretation leading to an illogical or absurd result. *Frazier,* 90 P.3d at 811.

Section 13–20–901(1), C.R.S.2009, provides in pertinent part:

> A court of appeals may, in its discretion, permit an interlocutory appeal of a district court's order that grants or denies class action certification *under court rule* so long as application is made ... *within ten days* after entry of the district court's order.

(Emphasis added.)

The plain language of the statute allows an appellate court to permit the appeal under its rules within ten days after entry of the order. The statute does not set forth a method to compute the ten-day deadline. However, our appellate rules contain a method for computing a ten-day period, allowing a grace period for intervening weekend days and holidays.

C.A.R. 1(b) provides that the taking of appeals "shall be in accordance with [the appellate court's] rules except for special proceedings in which a different time period is set by statute for the taking of an appeal."

C.A.R. 3.3 provides that interlocutory appeals of the grant or denial of a class action under C.R.C.P. 23(f) "may be allowed pursuant to the procedures set forth in that rule and C.R.S. § 13–20–[901]." Those procedures specify that the application shall be permitted "under court rule." C.A.R. 26(a) specifies that in calculating deadlines, the date of the order being appealed shall not be included, and for any period less than eleven days, "intermediate Saturdays, Sundays and

legal holidays shall be excluded in the computation."

We conclude that the General Assembly intended by its plain language for the appellate courts to apply both their rules of procedure and the permission granted in section 13–20–901(1) in considering interlocutory appeals. Thus, we must apply C.A.R. 26(a) together with the grant afforded under the statute to determine when the ten-day deadline occurs.

We are also persuaded that C.A.R. 26(a) should be applied here by *Outcelt v. Schuck*, 961 P.2d 1077, 1081 (Colo.1998), which similarly applied C.A.R. 26(a) to section 1–40–107(2), C.R.S.2009. That statute prescribes a procedure for appealing a title board's review but does not say how to measure the time limit. The court noted that by its own terms C.A.R. 26(a) is used to measure periods of time prescribed by statute. *Outcelt*, 961 P.2d at 1081.

■ We thus conclude that the phrase "under court rule" in section 13–20–901(1) applies not just to C.R.C.P. 23 but also to court rules which prescribe the method of computing the time limit to appeal the grant or denial of class certification.

Our conclusion is not altered by section 2–4–108(2), C.R.S.2009, a statute which neither party has cited to us. That statute provides instructions on measuring statutory time periods and directs that in computing a period of days, the first day is excluded and the last day is included unless it is a weekday or a holiday. The section is silent concerning intervening holidays and weekend days. We therefore read its provisions in conjunction with the provisions of C.A.R. 26(a), the court rule which bears directly upon measuring time prescribed by statute.

■ Applying C.A.R. 26(a) to the question at hand, we determine that the appeal was filed in time. We note that June 26, 2009 fell on a Friday. Giving credit for intervening Saturdays and Sundays, as well as the Independence Day holiday during which court offices were closed, defendants filed their petition seeking review on the tenth business day after June 26, which was July 13, 2009.

We therefore determine that the petition seeking review was timely.

## II. Exercising Discretion to Grant Interlocutory Review

■ Initially, to determine whether to grant the petition, it is necessary to apply the five-factor test prescribed in *Prado–Steiman v. Bush*, 221 F.3d 1266 (11th Cir.2000), and enunciated by a division of this court in *Clark v. Farmers Insurance Exchange*, 117 P.3d 26, 29 (Colo.App.2004) (relying upon a five-factor test prescribed in *Prado–Steiman* to determine whether we should exercise our discretion to hear the interlocutory appeal). We conclude that we should review the class certification.

The first factor is known as the "death knell" because it asks whether the trial court's order would, on the one hand, provide an impetus for the plaintiff to cease seeking relief because individual claims are relatively small, or, on the other hand, provide an "irresistible pressure" to settle because the stakes are so high. *Clark*, 117 P.3d at 29. Here, in our view, the certification of two classes involving the sale of several thousand automobiles, combined with the treble damages and attorney fee provisions of the CCPA, arguably produces an irresistible pressure upon defendants to settle.

Second, we must evaluate whether the appellant makes a threshold showing that the class certification likely constitutes an abuse of discretion. *Id.* Here, we consider this factor in conjunction with the third: "whether allowing the appeal will permit resolution of an unsettled legal issue." *Id.*

In considering this appeal, we are faced squarely with a question not yet considered by any Colorado appellate court. We are asked to determine whether a theory of presumed reliance on material omissions in a consumer protection claim will satisfy the requirement to show a classwide theory of causation and injury sufficient to satisfy the requirements of C.R.C.P. 23. Resolution of these second and third factors indicates, on balance, that we should review the certification.

■ Applying the fourth and fifth factors is less helpful to our analysis. The fourth factor directs that we should consider the nature of the litigation in the trial court and whether the scope of the classes or the dynamics of the litigation are likely to change as new facts are developed. *Id.* Defendants urge that the trial court should consider the particular facts of each vehicle sale and that only by doing so can the elements of reliance and damage be determined. Plaintiff contends that the case rises or falls on the basis of uniform written documents that memorialized each sale. As shall be discussed in this ruling, we believe that the case will benefit from further development of the facts regarding individual sales.

■ Finally, the fifth factor asks us to consider the "likelihood that future events could make immediate appellate review more or less appropriate." *Id.* We have not been made aware of any future events that might affect the appropriateness of our review.

We therefore conclude that immediate review of the class certification is appropriate.

### III. Review of Class Certification

Here, plaintiff alleged that she and the class members were uniformly provided automobile sales documents that violated the CCPA because those documents did not disclose the price of various dealer-added products. She contends that customers either paid for but did not receive such products or received the products but were unaware of the fact that their cost was added to the sales price of the automobile.

The trial court did not conduct an evidentiary hearing in reaching its conclusion. However, it had numerous exhibits which reflected most, if not all, of the transaction documents used by defendants in the intake, processing, and sales of their automobiles, as well as excerpts of six C.R.C.P. 30(b)(6) deposition transcripts containing the sworn testimony of defendants' employees and managers. Those deponents described in detail the procedures employed by the various dealerships during the approximate period from 2004 to 2006. Based upon that record testimony and the numerous exhibits, it was apparent to the trial court that the custom and practice of the defendant dealerships was to install or "preload" dealer-added, aftermarket products on "the largest majority of cars." These aftermarket products consisted primarily of prefabricated adhesive pin striping, some painted pin striping, and clear film protective masks referred to as "clearbras." As a general rule, for automobiles other than those traded from another dealer, there was no specific identification on any sales document breaking down the costs of the preloads from the reported manufacturer's suggested retail price (MSRP). Indeed, one employee testified that in his experience the preloads or the charges for them were never identified on the buyer's order or the installment sales contract. Other testimony revealed that an addendum sticker containing the name and price of any preloads was affixed to new car windows close to the manufacturer's window sticker (Monroney Sticker), which contained the automobile's vehicle identification number, estimated mileage, features, and MSRP. The Monroney Sticker was not modified to reflect the cost of the preloads. Defendants contend that other sales documents incorporate by reference the window stickers displayed on the automobiles.

At all times pertinent, the addendum sticker was attached in the dealers' prep departments, while the preloads themselves were installed by the service department. The practice was to create a repair order which directed a technician to install the preloads, but the repair order was not shown to the buyer. In cases where painted pin striping was applied, a third-party vendor was used to provide the service at the dealership. A purchase order was used to order vendor-supplied service. Both repair orders and purchase orders were tracked through use of a computer program known as the Reynolds and Reynolds system.

Plaintiff alleges that she financed the purchase of a new automobile from one of the defendant dealers in April 2006. She claims that a retail charge of $548 for two dealer-added aftermarket products was added to the price of her vehicle despite the fact that the products were never installed. She asserts that she was not provided with a complete

written contract setting forth all the terms and conditions of the sale and that the receipts and documents she did receive did not disclose the nature and cost of the dealer-added products.

The trial court certified two classes, with plaintiff designated as the class representative for each. The first class (Class I) includes persons who purchased a vehicle from defendants between April 8, 2003 and June 26, 2009 and were charged for dealer-added products that were never installed. The second class (Class II) consists of persons who purchased a vehicle between April 8, 2003 and June 26, 2009 and were charged for dealer-added products that were installed but not disclosed in writing.

Defendants oppose the class certification on several grounds. They contend that the trial court failed to follow the guidelines expressed in *Jackson v. Unocal Corp.*, 231 P.3d 12, 18 (Colo.App. 2009), by failing to apply a burden of proof based upon a preponderance of the evidence and by failing to conduct a rigorous analysis of the evidence. Had the trial court applied that burden, defendants contend, it would have determined that there was no classwide method to establish causation and injury. Further, defendants urge that individualized findings of fact are necessary to determine whether a particular consumer falls within a class definition. Because each sale was accompanied by face-to-face negotiations between sales persons and customers, in defendants' view there are no common issues which predominate over individual issues. Thus, they argue that plaintiff failed to establish numerosity, predominance, superiority, or typicality of claims.

■ Class actions "eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact." *Mountain States Tel. & Tel. Co. v. Dist. Court*, 778 P.2d 667, 671 (Colo.1989). Class actions provide an economical means of disposing of multiple claims in one lawsuit. *Id.* C.R.C.P. 23 is the rule of procedure dealing with class actions and it "should be liberally construed in light of its policy of favoring the maintenance of class actions." *Farmers Ins.*

*Exch. v. Benzing*, 206 P.3d 812, 818 (Colo. 2009).

The four class action requirements of C.R.C.P. 23(a) are (1) the class is so numerous that joinder of all its members is not practical, (2) questions of law or fact are common among the members, (3) the claims or defenses of the class representative are typical of those of the class members, and (4) the class representative fairly and adequately represents the interests of the class members. C.R.C.P. 23(a); *Benzing*, 206 P.3d at 818.

In addition, a successful class action must fit within one of the three subsections of C.R.C.P. 23(b). As pertinent here, plaintiff sought certification under C.R.C.P. 23(b)(3). Certification is appropriate under C.R.C.P. 23(b)(3) if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other methods for the fair and efficient adjudication of the controversy. *Benzing*, 206 P.3d at 818.

■ A court must find by a preponderance of the evidence that the prerequisites of C.R.C.P. 23(a) and (b) have been met. *Jackson*, 231 P.3d at 19. A court must also accept as true the allegations in support of certification. *Benzing*, 206 P.3d at 818.

■ The requirement of numerosity means that a class must be large enough to make joinder of all its members impractical. *LaBerenz v. Am. Family Mut. Ins. Co.*, 181 P.3d 328, 334 (Colo.App.2007). Although the trial court may not speculate about the size of any class, it may make "common sense" assumptions to support its finding that joinder would be impractical. *Id.* at 334–35. Further, there should be a method which allows the court to ascertain whether a person fits within a class, although difficulty in identifying class members will not alone defeat certification. *Colo. Cross–Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D.Colo.1999).

■ Establishing commonality does not necessarily mean that every issue must be common to the class. If the claims of the class representative and the class members

are based upon the same legal theory, commonality is established. *Id.; see also Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 480 (D.Colo.1998).

■ A successful prospective class representative must also establish typicality, meaning that there is identical unlawful conduct which has been directed at both the class representative and the proposed class members irrespective of some variation in the facts that underlie the individual claims. *LaBerenz*, 181 P.3d at 338.

■ To establish that questions of law or fact common to the class predominate over questions of law or fact that affect only individual members, a plaintiff must advance "a theory by which to prove or disprove 'an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" *Benzing*, 206 P.3d at 820 (quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 580 (D.Minn.1995)).

■ We accord the trial court discretion when reviewing its decision whether to certify a class action, and we will not disturb its conclusion unless it is clearly erroneous and an abuse of that discretion. *Id.* at 817. "An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies incorrect legal standards." *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo.App.2005).

Defendants attack the class certification on various grounds, several of which share a common theme. They contend that there is no classwide method of establishing causation and injury. Without proof of those elements, the class representative cannot establish numerosity, commonality or typicality. One aspect of this argument concerns their assertion that there was no individualized assessment of the varying face-to-face negotiations between members of the class and sales representatives. Only by analyzing these negotiations, argue defendants, can plaintiff establish that her class members suffered injury as a direct and proximate result of the alleged CCPA violations in connection with the disclosure and sale of dealer-added prod-

ucts. They contend that only by looking at individual sales negotiations and the price paid in any transaction could the court conclude that the buyer suffered an economic injury. Thus, the argument goes, the trial court was required to engage in the type of fact-intensive inquiries demanded by *Jackson*, and in failing to do so, the trial court ignored defendants' substantial proof that certification was impossible. Defendants cite *Benzing* to support their argument that face-to-face transactions involving individual buyers preclude a classwide method of proving injury. In defendants' view, without a fact-intensive inquiry into the individual transactions, and absent a classwide method of proving causation and injury, plaintiff cannot establish the numerosity, commonality, and typicality requirements of C.R.C.P. 23(a).

In *Benzing*, there were face-to-face transactions between insurance agents and insureds in which uniform omissions of material information concerning UM/UIM policies allegedly occurred. The class representative alleged direct reliance on the material omissions based upon a theory that positive proof of reliance was not a prerequisite where the defendant made material omissions in connection with the sale of policies. A theory similar to this was first discussed in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). There, the defendants solicited and accepted standing orders of stock and were active in encouraging a market for that stock. The defendants planned to induce certain members of an Indian tribe to dispose of their shares without disclosing facts necessary to make an informed decision to sell. Relying upon the philosophy of full disclosure embodied in Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78, and Rule 10b–5 promulgated thereunder, the Court concluded that it was not necessary for the tribe members to prove active reliance as a prerequisite for their securities fraud claim. *Id.* at 153–54, 92 S.Ct. 1456.

The class representatives in *Benzing* urged the court to adopt a theory which presumed reliance and causation akin to the theory adopted in *Affiliated Ute*. However, *Affiliated Ute* relied in part upon the fact

that the defendants were market makers and brokers. *Id.*

*Benzing* rejected the notion of an efficient market in the context of selling individual insurance policies and raised doubt as to whether the theory used in *Affiliated* Ute would have application to the facts before it. *Benzing*, 206 P.3d at 821.

However, the court specifically reserved the question whether an inference of causation or reliance can be drawn from uniform misrepresentations or omissions in common law fraud claims or consumer protection claims, if the question were to be properly preserved. *Id.* at 823–24.

> We hold that this argument, articulated for the first time in briefs to this court and not considered by the court of appeals, was insufficiently raised in the trial court and therefore we reach no opinion as to the merits of this argument. We note that there are arguments in favor of and against applying such a presumption or inference in order to maintain a consumer protection or common law fraud class action, and jurisdictions addressing the question have reached different results.

*Id.* (citations omitted).

### A. The Trial Court's Conclusion of Predominance

▉▉▉▉ Here, we are presented with the question reserved by *Benzing*: whether the allegations of materially deceptive omissions in the context of an alleged violation of the CCPA satisfy a classwide theory of causation and injury. Because the requirement of predominance is met where a class representative advances a theory of proof on a classwide basis, individual proof of individual transactions is unnecessary. However, here, to advance a theory of causation and injury, plaintiff—and apparently the trial court— considered that uniformly deceptive sales documents provided a theory of proof on a simultaneous classwide basis.

The trial court explained that it was "persuaded that Plaintiff does in fact allege a classwide theory of liability and causation." In providing this conclusion of law, the court did not make any specific finding of fact, but instead analyzed the claims in terms of the necessary elements of proof and how plaintiff alleged a classwide basis of injury and causation:

> To establish a cause of action under the CCPA, a plaintiff must prove ... [in addition to other elements] ... the plaintiff suffered an injury in fact to a legally protected interest; and the challenged practice caused the plaintiff's injury....
>
> ....
>
> The Court is persuaded that Plaintiff does in fact allege a class-wide theory of liability and causation, with common issues of law and fact that predominate. The CCPA prohibits false and misleading statements and requires a clear and unambiguous written order, contract, or receipt disclosing all the terms of the sale. C.R.S. § 6–1–105(1)(*l*) & (m). [Plaintiff] contends that Defendants have violated the CCPA by not disclosing dealer-added products that were installed and/or charging consumers for dealer-added products that were never installed. [Plaintiff] is not relying on verbal face-to-face omissions or statements, but rather standard documents and records utilized by Defendants in selling vehicles. *In an action for deceit based on fraud, reliance may be proved by circumstantial evidence. Elk River Assocs. v. Huskin*, 691 P.2d 1148, 1154 (Colo.App. 1984); *Lurvey v. Phil Long Ford, Inc.*, [37 Colo.App. 11,] 541 P.2d 114, 116 (Colo.App. 1975). *Thus the alleged violations of the CCPA stem from the same alleged deceptive conduct*, that is, the failure to make adequate written disclosures of dealer-added products.

(Emphasis added.)

Thus, the trial court concluded that the issues of causation and injury predominated based upon the notion that "reliance may be proved by circumstantial evidence" and the factual conclusion that "violations of the CCPA stem from the same alleged deceptive conduct." We conclude that such ruling was error because there is no precedent for the theory in Colorado and because application of a fraud on the market theory to automobile sales is not feasible.

## B. Presumed Reliance

We reject the notion that there is any Colorado precedent for a theory of presumed reliance. There is a distinction between proving reliance by circumstantial evidence and presuming reliance on a classwide basis for purposes of determining whether individual sales negotiations are subsumed under a classwide theory of presumed reliance and, therefore, injury. Neither *Elk River* nor *Lurvey* stands for the proposition that an inference of causation or reliance is established where there is a material uniform misrepresentation or omission in the context of claims under the CCPA.

We are unable to find support for a presumed reliance doctrine in Colorado. *Benzing* must have recognized that the theory had not been adopted in Colorado when it specifically deferred consideration of the issue and noted that there were cases for and against applying a presumption of reliance in consumer protection or common law fraud class actions. None of the cases cited by *Benzing* to support its observation was a Colorado case.

To the extent that plaintiff contends that the presumed reliance theory is simply an application of the "fraud on the market theory" to other, similar statutory offenses, we reject the contention. The "fraud on the market theory" presumes that there is reliance by investors in securities transactions where the company's shares are traded on an efficient market. *Basic Inc. v. Levinson*, 485 U.S. 224, 241–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). It assumes that even though there were no direct representations made to investors, the market forces prevalent in an efficient market applied through purchases and sales by market professionals who rely upon public information and the established market price of the stock create a presumption of indirect reliance by the investors. *Id.; see also Benzing*, 206 P.3d at 821. *Basic* explained that the doctrine is unique to the "modern securities markets" and must be distinguished from traditional fraud claims in other contexts. *Basic*, 485 U.S. at 243–44, 108 S.Ct. 978. "The modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases, and our understanding of [the Securities Exchange Act's fraud] Rule 10b–5's reliance requirement must encompass these differences." *Id.* (footnote omitted). The readily ascertainable market price, recorded daily, provides access to the prices paid by the public on any given day. This stands in stark contrast to the individual prices negotiated by car buyers, some of which may pay hundreds less than other buyers for an identically equipped automobile.

We are unable to conclude that any similar theory would be justified in a CCPA claim where a car buyer claims that there were fraudulent omissions on window stickers and that, but for those omissions, the buyer would have paid a lower price or, perhaps, would not have purchased the automobile. In *Affiliated Ute*, and subsequent securities fraud cases, there is the added factor of a fiduciary duty being owed to the investors. In such case, it is not difficult to presume that investors are justified in relying upon a fiduciary's representation. Here, in contrast, there is an arm's length transaction between an automobile seller and buyer. No fiduciary duty is owed to the buyers.

Although no Colorado cases have adopted a presumed reliance theory, one Colorado court rejected a fraud-created-the-market theory in a municipal bonds case. *See Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1104, 1106 (Colo.1995) ("Because it unnecessarily addressed the doctrine of fraud-created-the-market, we disapprove of the court of appeals' holding that the doctrine is imported into Colorado law.").

Federal cases, applying Colorado law, have rejected efforts to extend the fraud on the market theory to common law and statutory claims. *See Schwartz v. Celestial Seasonings, Inc.*, 185 F.R.D. 313, 317–18 (D.Colo. 1999) (the plaintiffs are required to "prove reliance to succeed in their Colorado law and common law claims"); *In re Synergen, Inc. Sec. Litig.*, 154 F.R.D. 265, 267 (D.Colo.1994) ("[n]o Colorado court has applied the fraud-on-the market theory to a negligent misrepresentation claim").

We are also persuaded by a variety of state cases that have similarly rejected the invitation to apply a fraud on the market theory to presume reliance and causation in common law fraud or statutory deceit lawsuits. *See, e.g., Mirkin v. Wasserman,* 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568, 579–80 (1993) (doctrine cannot be applied to common law deceit and negligent misrepresentation claims in a securities action); *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 474–75 (Del.1992) (refusing to apply theory to state law fraud claims); *White v. BDO Seidman, LLP,* 249 Ga.App. 668, 549 S.E.2d 490, 493 (2001) (presumption of reliance inapplicable to negligent misrepresentation claim); *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151, 161–64 (2002) (a presumption of reliance theory would not be applied to consumer protection act); *Kaufman v. i-Stat Corp.,* 165 N.J. 94, 754 A.2d 1188, 1196 (2000) (no presumption of reliance to negligent misrepresentation claim); *Toy v. Metro. Life Ins. Co.,* 593 Pa. 20, 928 A.2d 186, 202 (2007) (doctrine not applied to statutory consumer protection claim).

We recognize that there are cases that have applied a presumption of reliance theory to establish predominance. *See, e.g., Weinberg v. Hertz Corp.,* 116 A.D.2d 1, 499 N.Y.S.2d 693, 696 (N.Y.App.Div.1986) (if representations are material, certification was warranted and reliance could be presumed subject to proof at trial), *aff'd,* 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (1987); *Cope v. Metro. Life Ins. Co.,* 82 Ohio St.3d 426, 696 N.E.2d 1001, 1008 (1998) (predominance requirement satisfied in class certification request and allowing inference of reliance where there was nondisclosure of material fact). However, we conclude that the cases rejecting the theory are the better reasoned because they recognize that there are special circumstances present in securities fraud cases that are not present in common law fraud actions.

Also, application of such a doctrine to the classes certified here would require a more rigorous analysis of the face-to-face purchase transactions. Class I members cannot establish a classwide theory of injury because the class might include those persons who paid a price lower than the MSRP less the value of the dealer-added, but omitted products.

The application of such a doctrine also fails with respect to Class II members who purchased automobiles with after-market dealer-added products installed. Here, we are unable to discern how a uniform theory of CCPA violations translates to uniform theory of injury. It is not difficult to surmise that some members of Class II were fully aware of the products, desired the products, and struck a bargain in anticipation of receiving the products. It is even possible that a particular price paid for a given automobile was so far below the MSRP that there was no effective charge for manufacturer-installed options, let alone dealer-added products. Plaintiff contends causation is established simply because the customers purchased automobiles. But their injuries, to the extent there were injuries, would not necessarily be based on the final purchase price of the car in all circumstances. Nothing in the complaint or the record suggests that all members of Class II sought rescission of the purchase price paid. Instead, it appears that the applicable theory of damages would necessarily require a class member to prove that but for the alleged deceit, he or she would not have purchased dealer-added products. Thus, the price paid by each customer is an important and predominant component of injury. We conclude that with respect to Class II members, the trial court should have engaged in a "rigorous analysis" of the merits of a classwide theory of liability to determine whether there were common questions of fact and law applicable to them. *See Jackson,* 231 P.3d at 25–26. Further, defendants assert affirmatively that evidence of face-to-face negotiations will establish their compliance with the CCPA. The trial court should also have rigorously analyzed whether such individualized evidence will affect the question of predominance. *See id.* at 25–26. Failing to do so was error.

Based upon our conclusion that there was no classwide theory of injury, plaintiff could not serve as a representative of Class II. Indeed, it is apparent from the trial court's order of certification that the

court must have relied on a perceived class-wide theory of injury in order to conclude that plaintiff would adequately represent both Class I and Class II. However, the trial court did not articulate any facts or legal basis to support such a conclusion. Accordingly, we hold that the trial court erred in concluding that plaintiff was an adequate class representative for Class II.

We therefore determine that it was error to certify the case as a class action, and we remand the case for further proceedings consistent with this opinion. If the trial court revisits the certification issue on remand, it should consider and apply the preponderance burden of proof.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge FURMAN and Judge BOORAS concur.